IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RIVERS UNLIMITED, *et al.*,<br><br>       Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF TRANSPORTATION, *et al.*,<br><br>       Defendants,<br><br>and<br><br>OHIO DEPARTMENT OF TRANSPORTATION<br><br>       Defendant-Intervenor. | **Case No.:** 1:06-CV-01775-JR |

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56 and LR 7.1(h), Plaintiffs Rivers Unlimited, Little Miami, Inc., the Sierra Club, and Marilyn Wall respectfully submit this Statement of Material Facts as to which there is no genuine issue in support of Plaintiffs' Motion for Summary Judgment.

<u>The Little Miami National Wild And Scenic River.</u>

1.      The Little Miami River was designated as a National Wild & Scenic River under the Wild & Scenic Rivers Act ("WSRA") over a quarter century ago.  AR 187-88, 9886.

2.      The Little Miami was designated as a State Scenic river in 1969 for the entire stretch of the river.  AR 9942.  In January of 1980, the lower 28 miles of the Little Miami River,

from Foster to the Ohio River (which includes the project area), were designated a Recreational component of the National Wild and Scenic Rivers System. AR 112-113. The Little Miami was specifically recognized for its recreational and scenic "outstandingly remarkable values." AR 9888. At the time of its designation it was recognized for its contribution of "vital open space for the use and enjoyment of present and future generations in an increasingly urbanized area." AR 8150, 42273. The management directions for the lower portion designated in 1980 adopted the original study plan findings for the Little Miami River (conducted in the early 1970s). AR 9886. The management direction for all designated sections is the same. AR 9886.

3. Significant efforts were made by Little Miami, Inc. to rehabilitate the lower portion of the river so that it could be included in the National system. AR 9887, 9921-23.

4. When evaluating the State's petition for inclusion, the Secretary of the Department of Interior stated: "Considering the close proximity of the river to the large urban metropolis of Cincinnati, it is indeed one of our Nation's most valuable recreation resources." AR 9926. Because of this natural setting, despite the surrounding urban environment, the lower Little Miami River's designation was hailed as a vitally important step toward protecting the area from incompatible or unplanned development. AR 42274.

5. The Little Miami National Wild and Scenic River is a rare river amongst those designated under the Wild and Scenic Rivers Act in that it is only one of two Wild and Scenic Rivers that flows through a major metropolitan area. AR 10968.

6. Principle activities on the this segment of the Little Miami National Wild and Scenic River include canoeing, kayaking, fishing, bird/wildlife viewing, hiking, and biking. AR 42273. Approximately 86 miles of the Little Miami River are canoeable, including the reach

PLAINTIFFS' STATEMENT OF
MATERIAL FACTS  - 2 -

within the Eastern Corridor study area.  AR 47276.  The river is canoeable within the detailed study area boundaries.  Id.  There is a public access point two miles upstream from the anticipated crossing and four miles downstream.  Id.  This leaves a six-mile section that is regarded for its recreational opportunities, as well as its scenic, natural quiet setting.  AR 42273.

7. Canoeists, kayakers, hikers and outdoor enthusiasts, including Plaintiffs and their members, come to this segment to enjoy the natural river setting with its scenic wooded banks, high bluffs, broad river floodplain, sandy beaches, islands, meandering channel, wildlife, fish, solitude, peace, serenity and quiet.  AR 42273-74; see Declarations of Marilyn Wall, Christine P. Curran, Donvan K. Hopkins and Stephanie D. Ross.  The diversity and harmonic nature of the river setting is critical to the scenic quality of the Little Miami National Wild and Scenic River.  Opportunities for solitude, serenity and quiet available in this segment also provide for increased opportunities for birding and viewing of associated riparian wildlife.  AR 42273.  Wildlife viewing in this segment continues to be of considerable value.  Id.  The Horseshoe Bend has an exceptionally high diversity of birds and other wildlife.  Id.  It is one of the few spots in Ohio that supports a breeding population of the prothonotary warbler, and perhaps, the hooded merganser.  Id.  Great blue herons, wood ducks and cormorants feed in this segment, as do multiple other ducks, birds and mammal species.  Id.  Of special interest to river users is the presence of beavers.  Id.  The Horseshoe Bend, including its upstream/downstream and floodplain environs is likely one of the best regional locations to view birds, mammals and other wildlife within the greater Cincinnati area.  Id.

PLAINTIFFS' STATEMENT OF
MATERIAL FACTS  - 3 -

8. Opportunities for a range of recreational activites exist along the Little Miami River and include canoeing and kayaking, fishing, bird watching, hiking and walking. AR 47717. In the proposed bridge location, the primary activity is canoeing and kayaking. Id.

9. The Little Miami State Scenic River Management Plan states that "[p]rotection of natural, scenic and environmental values of the Little Miami Scenic River should be the major consideration in reviewing and approving or disapproving projects which may have an adverse effect upon the River." AR 2939.

10. The Little Miami River is also designated by Ohio Environmental Protection Agency as Exceptional Warmwater Habitat ("EWH"). AR 47278. EWH designation is typically assigned due to the occurrence of unusual or exceptional assemblages of aquatic organisms characterized by a high species diversity, particularly those which are highly intolerant and/or rare, threatened, endangered or have special status. Id.

The Eastern Corridor Multi-Modal Project

11. The Eastern Corridor study area covers approximately 14 square miles and extends from the Cincinnati Central Business District and Riverfront redevelopment area in Hamilton County, east to the I-275 outerbelt corridor in Clermont County. AR 47130.

12. The Project is being conducted to identify workable strategies for improving long-term travel mobility between the City of Cincinnati and its eastern suburbs. Id.

A. The Major Investment Study.

13. An Eastern Corridor Major Investment Study ("MIS") was first completed in April 2000. AR 47131. The MIS is a separate analysis formerly required by the National Federal Aid Highway Act, 23 U.S.C. 101 et seq. The MIS Recommended Plan (Option 1)

PLAINTIFFS' STATEMENT OF
MATERIAL FACTS  - 4 -

established the framework for the Tier 1 and Tier 2 NEPA analysis of the Eastern Corridor by identifying the Option 1 Corridor as the sole Corridor to be reviewed in the NEPA process.  AR 47197.  Option 1 included a new bridge over the LMR in a new transit corridor.  AR 47202.

14.     Option 2 would have crossed the LMR on a widened existing crossing, rather than creating a new corridor crossing.  AR 47202.  Performance results indicated that both options provided travel benefits.  Id.  The main objective of Tier 1 was to identify a set of feasible multi-modal alternatives for further evaluation.  AR 47118-19.

15.     The MIS process, which removed Option 2, was conducted without the participation of the National Park Service ("NPS"), a critical stakeholder and cooperating agency.  AR 8153-54; AR 42278-79; AR 3444; AR 2159.

B.     The Preliminary Draft EIS

16.     EPA commented on the PDEIS in a May 6, 2004 letter and alerted the Ohio Department of Transportation that the DEIS should retain feasible options, that the PDEIS does not demonstrate that Option 2 is not feasible, and that without a full discussion of both Options, EPA remains unable to determine how the Options compare or why Option 2 is eliminated from review prior to preparation and issuance of the DEIS.  AR 10604-06.  NPS also submitted comments on the PDEIS in a letter dated May 27, 2004 and expressed similar concerns to those presented by the EPA.  AR 3443-60.  The U.S. Fish and Wildlife Service submitted comments on the PDEIS in a letter dated June 18, 2004 highlighting that the Little Miami River and its riparian corridor provide habitats for a diverse fauna, including many species of bird, mammals, reptiles, and amphibians and has a high-quality, diverse, warm-water fishery resource.  AR 8366.

C.   The NEPA Analysis – A Two Tiered EIS Analysis.

17.   The Eastern Corridor Multi-Modal Project has been subdivided into a two-tier NEPA process. AR 47686. The Tier 1 process was completed with the completion of the FEIS in September of 2005 (AR 47681) and the Record of Decision in June of 2006. AR 47099.

18.   Tier 1 was intended to present information on: (1) transportation needs; (2) key environmental resources; (3) the development and evaluation of feasible alternatives; (4) a preliminary assessment of expected impacts; and (5) the identification of a recommended transportation plan (set of feasible alternatives) to be carried through into more detailed study during Tier 2. AR 47118-19. Feasible alternatives in Tier 1 are not specific alignment locations, but rather alternative corridors that will be further developed during Tier 2. AR 47119.

19.   Tier 2, to be conducted after the completion of the Tier 1 EIS and ROD, will involve more detailed engineering and environmental analyses and a selection of a preferred alternative from the "feasible alternatives" identified in Tier 1. AR 47119. The Tier 1 process was broken down into modes (e.g. bus, rail, highway, bikeway). Id. The highway mode is the focus of this complaint. Tier 1 broke "New Highway capacity" into four distinct segments. AR 47121-22. Segment II concerns the construction of a new bridge across the Little Miami National Wild and Scenic River. AR 47122. The alternatives recommended for further evaluation in Tier 2 include: (1) 4 basic multi-lane mainline location alternatives for approaches to and crossing of the Little Miami National Wild and Scenic River; and (2) six basic multi-lane mainline alternatives for traversing the Little Miami National Wild and Scenic River floodplain east of the River main channel and Clear Creek. AR 47227-28. Basically, the alternatives for review include construction of either a 4-lane or six-lane bridge across the Little Miami National

Wild and Scenic River.  AR 47228.   The Tier 1 DEIS was issued on November 8, 2004.  AR 47101.

20. The EPA provided comments on the DEIS in a letter dated December 30, 2004. AR 9198-202.  EPA noted that decisions made at the Tier 1 stage affect whether certain impacts can or cannot be avoided in the later Tier 2 projects. AR 9198.  EPA voiced concerns with respect to the proposed new bridge across the Little Miami National Wild and Scenic River.  AR 9199.  EPA also noted that the project traverses several 4(f) and 6(f) resources and that mitigation of impacts may be unavoidable absent consultation with the State historic Preservation Office and the NPS.  AR 9199.  Finally, EPA rated the DEIS an "EC-2."  AR 9199 and 9202.   This means that the EPA has identified environmental impacts that should be avoided in order to fully protect the environment and suggest corrective measures which may require changes to the preferred alternative or mitigation measures that can reduce impacts.  AR 9202. The rating also means that the DEIS does not contain sufficient information to fully assess environmental impacts of the preferred alternative or other alternatives that are reasonably available to the project.  AR 9202.  EPA also strongly recommended that the impacts from the bridge be described as fully as possible in the Tier 1 EIS because the existence and placement of a new bridge is central to the overall Tier 1 multi-modal plan.  AR 9200.  EPA also requested that the Final EIS discuss the impacts associated with the Horseshoe Bend alignment, which is very likely an active meandering part of the channel.  AR 9200.  EPA's suggestions regarding this area included: (1) describing what stretches of the River are or may be active channels; (2) discuss the fate of a clear span bridge in the Horseshoe region or other potentially active channel regions; (3) discuss the potential future impacts from a bridge placed in a potentially active

PLAINTIFFS' STATEMENT OF
MATERIAL FACTS  - 7 -

channel of the Little Miami, given the River's future development within the floodplain, that is, is the channel likely to meander and necessitate bridge maintenance that would impact the River beyond what is contemplated in the DEIS; (4) discuss the visual impacts and mitigation in Area #2 where scenic values are likely to be impacted by a new bridge; and (5) **include a discussion of why Option 2 is not feasible** (the MIS did not explain its decision and it is not the appropriate place for such a decision).  AR 9200-01.

21. In NPS's comments submitted on December 7, 2004, regarding the DEIS, NPS identified significant concern over the proposed bridge crossing and the removal of Option 2 from the reasonable alternatives.  AR 2967.  It also expressed concerns over the incompatibility of the "new bridge" alternative with the State of Ohio's management plan for protecting the Little Miami National Wild and Scenic River.  AR 2968.

22. The U.S. Department of the Interior ("DOI"), Office of Environmental Policy and Compliance, provided comments on the DEIS in a letter dated April 18, 2005.  AR 2158-72.  In those comments, DOI disagreed with several conclusions in the DEIS and found it to be inadequate in several respects.  AR 2159.  It found that removal of Option 2 from review in the EIS process failed to meet the goals of NEPA.  AR 2160.  It also found that the proposed bridge crossing would have a significant and substantial impact due to the visual intrusion, noise impacts, and disruption of the natural setting and feeling of the LMR in that reach of the River. AR 2164, 2166-67.  DOI stated that it believed FHWA's 4(f) determination that no use is occurring was invalid.  It went on to state:

> Although a specific design is not known at this time, the proposed bridge will consist of multiple travel lanes, and will be elevated enough to span the river and the floodplain.  A four-lane bridge cannot be hidden from view.  The large mass

PLAINTIFFS' STATEMENT OF
MATERIAL FACTS  - 8 -

>of the proposed bridge (length, width, height, and multiple piers) in combination with its location in an unobstructed corridor with relatively few man-made intrusions would make it the most visibly dominate feature in this segment of the river.  Placing a massive bridge where there previously was not one results in a fundamental change in the scenic qualities in this portion of the LMR at the time of designation.  Opportunities to mitigate the visual impacts are very limited.  A new multi-lane bridge crossing the river in a relatively natural and unspoiled corridor would significantly and substantially impact the scenic values of the LMR.

AR 2167.  Furthermore, DOI noted that:

>[T]he proposed new bridge crossing would degrade the recreational experience on the LMR in two primary ways: creating a major new visual intrusion on the natural scene and by generating noise.  Canoeist and hikers enjoy the natural quite and solitude offered in the project area, which increases opportunities for viewing of birds and other wildlife.  Currently, the sight of birds and other wildlife provides a unique recreational experience, particularly in such close proximity to a major metropolitan area.  Substantial noise would be produced during construction, and once in place, the bridge would be a significant source of constant noise from both traffic and vehicle-induced vibration of the bridge and commuter rail.  Recreational opportunities to enjoy solitude, or the areas scenery and to view wildlife would thus be substantially and significantly impaired.  The severity and magnitude of the visual and recreational impacts to the LMR associated with a new bridge corridor crossing are so great that they can not be significantly mitigated.  The proposal would also have substantial direct and indirect impacts to associated fish and wildlife resources and values.

AR 2166-67.

23. Rivers Unlimited submitted comments on the DEIS in a letter dated January 6, 2005.  AR 10967-97.  Little Miami, Inc. and the Sierra Club individually submitted comments on the DEIS in letters dated January 10, 2005.  AR 470-89; 3701-3711.  Plaintiffs' comments highlighted several concerns about the Eastern Corridor DEIS including but not limited to the following: DOT and FHWA's failure to consider all reasonable alternatives, including Option 2; DOT and FHWA's failure to comply with Section 4(f) of the Transportation Act; and the

inability to mitigate impacts after DOT and FHWA have committed the Eastern Corridor to Option 1.  Id.

24.    Tier 1 was completed with the issuance of the Tier 1 Final Environmental Impact Statement ("FEIS") for the Eastern Corridor Multi-Modal Projects-Hamilton and Clermont Counties, Ohio PID 22970 on September 30, 2005.  AR 47681.

25.    Again, several agencies including the NPS and EPA provided comments, as well as environmental organizations and members of the public.  The U.S. Department of the Interior, Office of Environmental Policy and Compliance, submitted comments on the FEIS in a November 28, 2005 letter.  AR 42269-80.  DOI was "troubled" by the removal of Option 2 from review in the EIS.  AR 42270.  It also found that the comparison made between Option 1 and 2 in the final EIS uses vague and qualitative terms and that a "more rigorous analysis is warranted."  Id.  DOI disagreed with the FEIS conclusion that scenic impacts to the LMR would not be substantial.  AR 42272.  DOI noted that scenic resources were identified as outstandingly remarkable values and remain a protected value under the Wild and Scenic Rivers Act.  Id.  Because of the lacking discussion concerning Option 2, DOI requested that a supplemental EIS be prepared which included an alternative with no new river crossings, such as Option 2 from the MIS.  AR 42271.  DOI also disagreed with the Defendants' determination that the proposed project did not constitute a constructive use under Section 4(f) of the Transportation Act.  AR 42275-78.  DOI noted that as an agency with jurisdiction over the section 4(f) resource, it has determined that the project may significantly and substantially diminish the attributes which qualify for protection, and that therefore a constructive use does occur.  AR 42279.

PLAINTIFFS' STATEMENT OF
MATERIAL FACTS  - 10 -

26.     Little Miami, Inc. submitted comments on the FEIS in a letter dated November 28, 2005.  AR 1628-30.  The Sierra Club submitted comments on the FEIS in a letter dated November 27, 2005.  AR 1631-35.  Plaintiffs' comments again expressed their concerns about the failure to consider Option 2 as a reasonable alternative; the failure to comply with Section 4(f) of the Transportation Act; the inability to mitigate impacts after committing to Option 1 prior to an analysis of what mitigation measures may be available; and reliance upon an economic analysis that was based on clearly outdated gas price data.  Id.

27.     The NPS submitted comments to Mr. Dennis Decker, Division Administrator, U.S. Department of Transportation, Federal Highway Administration on June 28, 2006, concerning the FEIS/ROD process and the FHWA noise analysis report.  AR 8149-63.  The comments noted NPS's frustration with the lack of cooperation on the part of FHWA.  AR 8149.  NPS noted that it was disappointed that it was not contacted before FHWA released the ROD so that it could address unresolved issues related to the data analysis and mitigation measures associated with the project.  Id.  NPS stated that it was unable to agree with conclusions pertaining to Section 4(f) impacts and concluded, again, that the scenic and noise impacts will lead to a significant and substantial impact to the Little Miami River's recreational outstandingly remarkable value and that "[t]hese proximity impacts, despite the proposed mitigation, are severe enough to substantially diminish (impair) the activities, features, and attributes that qualified the LMR for inclusion into the National Wild and Scenic Rivers System."  AR 8150.  NPS concluded that a constructive use exists and requested that FHWA prepare a supplemental EIS containing a section 4(f) statement and addressing new noise data.  AR 8154.  According to NPS, "[t]he supplemental EIS should evaluate and compare noise and visual impacts to the [Little

PLAINTIFFS' STATEMENT OF
MATERIAL FACTS  - 11 -

Miami River's Outstanding and Remarkable Values] as well as the transportation benefits associated with Option 1 and Option 2, as compared to the environmental baseline." AR 8150.

28.     NPS attached to its June 28, 2006 comments a detailed report entitled *Analysis of Eastern Corridor Noise Readings*, where NPS identified several concerns and problems regarding the August 2, 2005 Noise Analysis conducted by ODOT's Office of Environmental Services. AR 8156-63. NPS raised several concerns. Id. First, details of the equipment setup and operation suggest potential operational errors that compromised the accuracy of the measurements. AR 8156-58. Second, data was collected at inappropriate sites: two of four sites were much closer to the busy roadways than to the river itself; one site was further from roads, however adjacent to a farm pump. AR 8156, 8158. Despite noise being raised as a concern, and the most dramatic alteration occurring within the "interior" sites of the river, the data did not include samples representative of the natural setting within interior river corridor locations. AR 8156. No monitoring was done along 1.8 river kilometers along the Little Miami River Park and Recreation Area, much of which is more than 1 km from roads. Id. Third, data were collected on one day: one hour of monitoring conducted sequentially at each of four sites. AR 8156, 8158-60. Sound level measurements made on a single summer afternoon do not support conclusions about potential impacts on all summer afternoons, let alone on fall or spring mornings. AR 8156. Fourth, the hourly Leq (equivalent continuous noise level) summaries of decibel (dBA) measurements blend the energy from all sounds together, failing to distinguish sounds from natural sources (resources protected in wild and scenic rivers) and sounds from anthropogenic sources (environmental impacts to be managed). AR 8156, 8160-61. The presence of bird or insect sounds does not diminish the impact of roadway noise. AR 8156. Fifth, there is no

PLAINTIFFS' STATEMENT OF
MATERIAL FACTS  - 12 -

justification for using hourly Leq summaries of dBA values to represent "background" sound levels.  AR 8156, 8161-62.  This metric has been used to document thresholds of annoyance in communities. AR 8156.  To estimate background ambient sound levels, there is substantial precedent and scientific justification for other metrics that would yield values 10 dB or more below those reported by ODOT.  AR 8156.  Sixth, based upon NPS guidelines for assessing noise impacts in natural areas (NPS Natural Resource Impairment guideline), at least 4 km of river will suffer major acoustical impairment from the proposed bridge, including much of the downstream river section adjacent to the 115 ha Little Miami River Park and Recreation Area.  AR 8162-63.  According to the NPS, the ODOT Office of Environmental Services study does not meet the basic requirements for sound monitoring projects, including the protocols that have been recommended and agreed upon by the Federal Interagency Committee on Aircraft Noise when evaluating noise impacts to natural areas. AR 8156-57.

29.     The ROD for the Eastern Corridor Transportation Project Tier I EIS was issued June 6, 2006 by FHWA. AR 47074-47099.  This formal federal administrative action will initiate Tier II detailed studies and the preliminary engineering phase for the new river crossing.  AR 47074.

Respectfully submitted this 25th day of June, 2007.

                          Respectfully submitted,

                          /s/
                        Brian A. Litmans (AK 0111068)
                        *Appearing Pro Hac Vice*
                        Public Interest Environmental
                        Attorney at Law
                        6251 West Tree Dr.
                        Anchorage, AK 99507

PLAINTIFFS' STATEMENT OF
MATERIAL FACTS  - 13 -

Telephone: 503-927-5288
Facsimile: 907-276-7110
blitmans@gmail.com

Robert Ukeiley (MD14062)
Law Office of Robert Ukeiley
435R Chestnut Street, Ste. 1
Berea, KY 40403
Telephone: 859-986-5402
Facsimile: 866-618-1017
rukeiley@igc.org


Counsel for Plaintiffs

PLAINTIFFS' STATEMENT OF
MATERIAL FACTS  - 14 -