# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RIVERS UNLIMITED, et al.,         )
         )
       Plaintiffs,       )
         )
    v.            )    Case No. 1:06-CV-01775 (JR)
         )
UNITED STATES DEPARTMENT OF   )
TRANSPORTATION, et al.,       )
         )
       Defendants,     )
         )
and              )
         )
OHIO DEPARTMENT OF TRANSPORTATION, )
         )
       Defendant-Intervenor.  )

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PAGE

A.  FHWA Considered Reasonable Alternatives to Meet the
    Purpose and Need of the Eastern Corridor Project ....................... 2

B.  There Is No Significant New Information Requiring the
    Preparation of a Supplemental EIS ................................... 7

C.  FHWA's Use of a Constant Price of Gasoline in Its Economic
    Modeling Was Reasonable and Did Not Inflate the Benefits
    of the Project ...................................................... 9

D.  FHWA Complied with Department of Transportation Act
    Section 4(f) ....................................................... 11

E.  Conclusion ........................................................ 16

i

TABLE OF AUTHORITIES

FEDERAL CASES                                                    PAGE

Allison v. Dep't of Transp.,
    908 F.2d 1024 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Citizens Against Burlington, Inc. v. Busey,
    938 F.2d 190 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,11,13
City of Alexandria v. Slater,
    198 F.3d 862, 866 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
City of Williams v. Dombeck,
    151 F. Supp. 2d 9 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Geer v. Federal Highway Admin.,
    975 F. Supp. 47 (D. Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Izaak Walton League of Am. v. Marsh,
    655 F.2d 346 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Marsh v. Or. Natural Resources Council,
    490 U.S. 360 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,13
Natural Resources Defense Council v. Morton,
    458 F.2d 827 (D.C. Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Nat'l Comm. for the New River, Inc. v. FERC,
    373 F.3d 1323 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Sierra Club v. Dep't of Transp.,
    753 F.2d 120 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Sierra Club v. U.S. Dep't of Transp.,
    310 F. Supp. 2d 1168 (D. Nev. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Thomas Jefferson Univ. v. Shalala,
    512 U.S. 504 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Town of Cave Creek, Ariz. v. FAA,
    325 F.3d 320 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Wyo. Outdoor Council v. U.S. Forest Serv.,
    165 F.3d 43 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

FEDERAL STATUTES

16 U.S.C. § 1273(a)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
16 U.S.C. § 1278 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
23 U.S.C. §§ 134-35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
49 U.S.C. §§ 5303-06 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

FEDERAL REGULATIONS                                    PAGE

23 C.F.R. § 450.318(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
23 C.F.R. § 772.19(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

The Eastern Corridor Project is the product of a lengthy planning process that involved federal entities, state and local entities from three states, and environmental groups. A broad-based consensus emerged to make lasting improvements to the state of the current transportation infrastructure in the greater Cincinnati area through a region-wide, multi-modal plan involving new highway, bus, rail, bikeways, and improvements to existing infrastructure. Plaintiffs, who were part of that process, now seek to thwart it through this lawsuit. And, they seek to do so mainly to avoid the potential environmental impacts to a very short stretch of the lower Little Miami River within the project area known as Horseshoe Bend. Such impacts, however, were considered by the Federal Highway Administration ("FHWA")[1] and do not justify overturning its decision. Plaintiffs' narrow approach demonstrates why FHWA is afforded deference in the planning of federal highway projects. While individuals or individual groups may have particular interests at stake, FHWA must look at the whole project and determine which set of alternatives, as a whole, meet the goals of the project.

In their Reply, Plaintiffs have again, as they did in their opening brief, expressed strong disagreement with FHWA's decision to reject the option of expanding the existing Beechmont Levy Bridge in favor of alternatives involving the construction of a new bridge during the National Environmental Policy Act ("NEPA") process. Plaintiffs also repeat their other arguments that FHWA should have conducted a supplemental environmental impact statement, used a different price of gasoline in its economic model, and made different findings regarding constructive use under the Department of Transportation Act Section 4(f) ("Section 4(f)"). While Plaintiffs disagree with the decisions made by FHWA, it has failed to show that FHWA's

---

[1]    The federal defendants are referred to collectively herein as FHWA.

decisions were arbitrary or capricious or otherwise not in accordance with the law, the relevant standard under the Administrative Procedure Act ("APA"). Plaintiffs also fail to show that FHWA failed to consider the extensive comments submitted by interested federal and state agencies, including the National Park Service ("NPS"), the Department of the Interior Office of Environmental Policy and Compliance ("DOI"), and the U.S. Environmental Protection Agency ("EPA"). Accordingly, FHWA's Motion for Summary Judgment should be granted and Plaintiffs' Motion for Summary Judgment should be denied.

A. **FHWA Considered Reasonable Alternatives to Meet the Purpose and Need of the Eastern Corridor Project**

Repeating many of their initial arguments, Plaintiffs argue in their Reply that Option 2 (the Option to expand the existing Beechmont Levy bridge) meets the purpose and need of the Eastern Corridor Project, that FHWA's explanation for excluding Option 2 from detailed consideration was insufficient, and that exclusion of Option 2 following the Major Investment Study ("MIS") process was improper. As demonstrated in the administrative record, FHWA carefully considered Option 2, which was thoroughly analyzed during the MIS process, and found that it would not meet the purpose and need of the project. Plaintiffs' arguments to the contrary are nothing more than second-guessing of FHWA's decision. The fact is that FHWA thoroughly considered whether this option would meet the purpose and need of the project, and that is all that is required under NEPA. See AR 47741-49.

First, FHWA has thoroughly explained why Option 2 does not meet the purpose and need. FHWA devotes nine pages of the final environmental impact statement ("FEIS") to explaining the differences between Option 1 (the new bridge alternative) and Option 2 with

2

respect to economic, environmental, and performance criteria and how those differences render

Option 2 inadequate. AR 47741-49; see also Def. Mot. at 15-17. Not all those reasons need be

repeated here, but among those are: (1) Option 2 would result in 500,000 more vehicle operating

hours annually than Option 1; (2) Option 2 would provide no congestion and delay reduction by

2020;[2] (3) Option 2 would likely require piers in the Little Miami River which would interfere

with kayaking and canoeing, whereas Option 1 could be done with a clear-span bridge without

in-stream piers; (4) Option 2 would require the displacement of *83 single family homes*, as

opposed to 2 homes under Option 1; and (5) Option 2 would cost over twice as much as Option

1. AR 47743-48. While Plaintiffs simply ignore these findings, these facts provide ample

support for FHWA's decision not to consider highway alternatives incorporating Option 2 during

the NEPA process. See AR 47749. Therefore, FHWA's decision to exclude Option 2 was

reasonable.

FHWA's explanation in the FEIS was not a post hoc rationalization, as Plaintiffs claim.

See Pls. Reply at 4, 5. Indeed, this claim is inexplicable, given that FHWA issued the FEIS

*before* issuing the record of decision for Tier 1 of the Eastern Corridor Project. As it was

required to do under NEPA, FHWA considered comments from relevant federal and state

agencies and the public. In response to those comments regarding the selection of alternatives,

particularly comments from NPS and EPA, in the FEIS FHWA included a detailed explanation

of its decision to eliminate Option 2 from consideration. See AR 47741. FHWA has provided a

clear pre-decisional record of the reasons that Option 2 did not meet the purpose and need and

---

[2]    While the FEIS states that Option 1 will provide "5% or greater" congestion and delay
reduction over Option 2, the differences for many road segments are much greater. AR 47775-
77.

3

therefore was eliminated from consideration. The law in this circuit is clear that FHWA need not consider alternatives that do not meet the federal agency's goals for the project. See, e.g., Citizens Against Burlington, Inc. v. Busey, 938 F.2d 190, 195 (D.C. Cir. 1991) ("the proposed alternative is reasonable only if it will bring about the ends of the federal action"). Therefore, FHWA properly eliminated Option 2 from consideration.

Plaintiffs' attempts to distinguish controlling precedent are unavailing. Plaintiffs in the Slater case argued that a 10-lane bridge would substantially improve congestion and delay compared with the existing 6-lane bridge. See City of Alexandria v. Slater, 198 F.3d 862, 866 (D.C. Cir. 1999). Similarly, Plaintiffs here argue that because Option 2 would be an improvement over the existing infrastructure and would provide some benefit for a limited period of time, it meets the purpose and need of the project. See Pls. Reply at 6-8. The Slater court rejected that argument, instead upholding FHWA's determination that only a 12-lane bridge would meet the demands of estimated volumes in 2020. Slater, 198 F.3d at 868. Similarly, this Court should defer to FHWA's well-reasoned and substantiated analysis showing that only Option 1 will provide substantial benefits with respect to traffic congestion and delay by 2020.

Plaintiffs' assertion that, under District of Columbia Circuit precedent, an alternative need not present a "complete solution" is misguided. On this point, Plaintiffs ignore directly applicable discussion in the Slater opinion. The court specifically rejected the argument that a ten-lane bridge would meet the purpose and need even though it would not be a "complete solution." Slater, 198 F.3d at 868. The court explained that in the earlier Morton case, the broad articulation of reasonable alternatives "was compelled by the national scope of the problem being addressed: 'When the proposed action is an integral part of a coordinated plan to deal with a

4

broad problem, the range of alternatives that must be evaluated is broadened.'" Id. (quoting

Natural Resources Defense Council v. Morton, 458 F.2d 827, 835 (D.C. Cir. 1972)). The court

explained that both cases stand for the same proposition: "a 'reasonable alternative' is defined by

reference to a project's objectives." Id. at 869. For a more localized project, such as the Eastern

Corridor Project, "it is simply a *non sequitur* to call a proposal that does not 'offer a complete

solution to the problem' a 'reasonable alternative.'" Slater, 198 F.3d at 869. Therefore,

Plaintiffs' argument that Option 2 meets the purpose and need, even if it is an incomplete

solution to the problem being addressed in the Eastern Corridor Project, is without merit.

 Second, Plaintiffs' argument that the MIS does not support FHWA's conclusion not to

carry forward Option 2 as an alternative misinterprets the nature of the MIS process and ignores

the legal framework for planning federal highway projects. It is required by statute that planning

for highway projects begin at the local level. See 23 U.S.C. §§ 134-35, 49 U.S.C. §§ 5303-06.

Under the applicable regulations, local entities may undertake a regional, multi-modal planning

study, such as the MIS for the Eastern Corridor Project. See 23 C.F.R. § 450.318(a). The results

of these studies are then incorporated into the NEPA process. Id. Plaintiffs' assertion that the

MIS did not make a finding that Option 2 did not meet the purpose and need of the Eastern

Corridor Project, see Pls. Reply at 4-5, is irrelevant. The MIS, itself, is not a NEPA document,

does not contain a purpose and need statement, and does not evaluate whether alternatives meet a

defined purposed and need. Rather, a MIS looks very broadly at a wide range of alternatives and

narrows those alternatives to recommended alternatives that are carried forward to the NEPA

process. 23 C.F.R. § 450.318(a). During the NEPA process, FHWA defines the purpose and

need and makes a finding as to whether certain alternatives developed during the MIS process

meet the defined purposed and need. And, in fact, FHWA considered Option 2 and clearly stated in the FEIS that Option 2 did not meet the purpose and need and stated the reasons for its finding. AR 47741-49.

Moreover, Plaintiffs ignore the fact that, at the end of the MIS process, the MIS Task Force recommended Option 1 over Option 2 along with a range of multi-modal alternatives. This finding should not be ignored. The MIS Task Force included relevant state and federal agencies, local governments, and environmental groups that developed the project plan over a three-year period. Plaintiffs, who were part of that process, now have come in after the fact and are second-guessing, not only FHWA, but the entire 57 member MIS Task Force. In carrying forward the alternatives recommended in the MIS, FHWA complied with the appropriate federal scheme for planning highway projects, the very purpose of which is to plan highway projects at the local level. As well as being contrary to the relevant federal law, it would be incredibly inefficient for FHWA to set aside the findings of the MIS Task Force and develop entirely new alternatives during the NEPA process.

The delegation of planning to the local level and the carrying forward to the NEPA process of alternatives recommended during an MIS process was explicitly upheld in Sierra Club v. U.S. Dep't of Transp., 310 F. Supp. 2d 1168 (D. Nev. 2004). Plaintiffs attempt to distinguish the case on the basis that "the finding is limited to dismissing alternatives that do not meet the purpose and need." Pls. Reply at 6 n.4. This is not a point of distinction at all. The issue in that case, just as it is here, was *whether* a certain alternative met the purpose and need. The court ultimately found that the Plaintiffs' chosen alternative did not meet the purpose and need. Sierra Club, 310 F. Supp. 2d at 1193. Plaintiffs have pointed to no factual or legal distinctions between

6

the cases that would lead to a different result here. Plaintiffs' attempt to distinguish additional

cases also on the basis that they stand only for the proposition that FHWA was not required to

consider alternatives that do not meet the purpose and need, see Pls. Reply at 5, n.3, is similarly

without basis.

Accordingly, while Plaintiffs have repeatedly and forcefully expressed their disagreement

with FHWA's decision to eliminate Option 2 as an alternative, they have not shown that

FHWA's decision was arbitrary and capricious. FHWA has clearly articulated reasonable

grounds for its decision in satisfaction of NEPA, and its decision should be upheld.

**B.      There Is No Significant New Information Requiring the Preparation of a
         Supplemental EIS**

As Plaintiffs recognize, the standard for requiring a supplemental EIS based on new

information following the agency's decision is quite high. Pls. Reply at 9. A supplemental EIS

is required only "where new information 'provides a *seriously* different picture of the

environmental landscape.'" Nat'l Comm. for the New River, Inc. v. FERC, 373 F.3d 1323, 1330

(D.C. Cir. 2004) (emphasis in original) (quoting City of Olmsted Falls, Ohio v. FAA, 292 F.3d

261, 274 (D.C. Cir. 2002)); see also Marsh v. Or. Natural Resources Council, 490 U.S. 360, 374

(1989) (an EIS should be supplemented only if new information shows that the environment will

be affected "in a significant manner or to a significant extent not already considered"). Plaintiffs

fail to meet this standard.

Plaintiffs admit that the "issues presented by NPS [following the issuance of the record of

decision] are certainly not new." Pls. Reply at 10. Plaintiffs thus rest their entire argument on

the 7-page noise report prepared by Dr. Fristrup. Id. Plaintiffs concede that Dr. Fristrup's report

7

contains no new data, id., and yet they assert that his analysis alone provides a seriously different

picture of the potential environmental impacts of the project, thus requiring a supplemental EIS.

Even the information in the report is not entirely new because Dr. Fristrup participated in

meetings with FHWA, the Ohio Department of Transportation ("ODOT") and NPS during which

noise impacts of the project were discussed. AR 8777. Thus, while Dr. Fristrup's written report

was not submitted to FHWA before the record of decision ("ROD") issued, Dr. Fristrup had

previously provided input which FHWA considered. But, even assuming that the information in

Dr. Fristup's report was not previously considered by FHWA, his analysis shows, at most, that

noise impacts may be slightly greater than FHWA calculated. This does not constitute

significant new information that changes the environmental landscape. And, even if Dr.

Fristup's guesses as to what new data might show are accurate (because he does not provide any

actual data, just critique), those estimates do not show that FHWA would violate the noise

abatement standards set forth in its regulations. Plaintiffs' assertion that Dr. Fristrup's report is

significant because it "indicates that a constructive use is taking place," Pls. Reply at 10, is

merely a conclusory assertion belied by the facts and does not demonstrate the need for a

supplemental EIS.

Finally, the fact that there is a report "finding fault with ODOT's analysis and findings,"

Pls. Reply at 11, does not dictate the need for a supplemental EIS. That is simply not the

standard. Rather, the standard is whether the new information provides a seriously different

picture of the environmental landscape. The Supreme Court has recognized that lots of new

information bearing on the environmental impacts of a project may come to light after an agency

finalizes a decision. Such new information only requires a supplemental EIS in a limited number

8

of circumstances where the new information shows that the environment will be affected in a

significant manner or degree not already considered by the agency. Marsh, 490 U.S. at 374.

Dr. Fristrup's report does not fall into the limited range of circumstances requiring a

supplemental EIS.

### C.     FHWA's Use of a Constant Price of Gasoline in Its Economic Modeling Was Reasonable and Did Not Inflate the Benefits of the Project

As they did in their opening brief, Plaintiffs argue that FHWA's economic analysis of the

costs and benefits of the Eastern Corridor Project was arbitrary and capricious because FHWA

used a constant price of gasoline, which was $1.13 per gallon when the economic analysis was

conducted. See Pls. Reply at 12-14. As FHWA already has explained, FHWA's economic

model for evaluating the economic benefits of the project employed a standard practice of

holding the price of gasoline, as well as other prices, constant. AR 506. The prices used in the

model were taken from the Highway Economic Requirement System, FHWA's standard model

for evaluating the costs and benefits of particular highway programs. AR 607. In evaluating

FHWA's economic analysis, the Court's role is "to determine whether the EIS was compiled

with objective good faith and whether the resulting statement would permit a decisionmaker to

fully consider and balance the environmental factors." City of Williams v. Dombeck, 151 F.

Supp. 2d 9, 23 (D.D.C. 2001) (quoting Sierra Club v. Adams, 578 F.2d 389, 393 (D.C. Cir.

1978)). Plaintiffs have failed to show how FHWA's utilization of its standard model was not in

good faith or that it failed to fully consider and balance the environmental factors.

Though they do not show that FHWA's analysis varied in any way from its standard

practice, Plaintiffs nevertheless argue that holding the price of gasoline constant was

9

unreasonable because, as the price of gasoline increases, more people will switch to mass transit modes of transportation. Pls. Reply at 13. This in no way undermines FHWA's economic analysis of the savings to drivers from the project. For the people who still choose to drive, the savings from spending less time in traffic and driving fewer miles during their commutes will result in greater savings than if the price of gasoline were lower. For the people who choose to commute by mass transit, the Eastern Corridor Project will offer new routes which will be more convenient for people who need to travel along the east-west corridor between Cincinnati and the eastern suburbs. For example, the new rail line that would run directly east-west over the new bridge across the Little Miami River, which will be shared with a highway, would allow commuters who might otherwise drive to take public transportation. Thus, by opposing the Eastern Corridor Project, Plaintiffs are opposing a project that will have tangible environmental, as well as economic, benefits on travel within the greater Cincinnati area.

Finally, although Plaintiffs strongly advocate a different view, they have failed to show that FHWA's economic analysis was invalid under the relevant standard. An agency's analysis of the costs and benefits of a project under NEPA should not be overturned unless it is arbitrary or "clearly gave insufficient weight to environmental values." Izaak Walton League of Am. v. Marsh, 655 F.2d 346, 378 (D.C. Cir. 1981). This is not an instance where an agency has inflated the economic benefit of a project in order to make the project seem more favorable to the decisionmaker. Rather, FHWA has fairly and thoroughly considered economic and environmental considerations and based its decision to proceed with the project relying heavily on environmental factors, *i.e.*, the need to reduce congestion and delay, reduce vehicle miles

traveled, and minimize in-stream disturbance of the Little Miami River. Accordingly, FHWA's economic model and reliance thereon in issuing the ROD were not arbitrary and capricious.

**D.    FHWA Complied with Department of Transportation Act Section 4(f)**

Plaintiffs' arguments regarding Department of Transportation Act Section 4(f) largely repeat the arguments made in Plaintiffs' opening brief. FHWA has addressed those arguments in its opening brief, see Defendants' Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment ("Def. Mot.") at 33-44 (Docket No. 34), and, therefore, will address only a few of Plaintiffs' points here.

Plaintiffs argue that FHWA's noise analysis and its constructive use finding "should not be given any deference" by this Court. Pls. Reply at 15. Plaintiffs' assertion ignores weighty authority in this circuit holding that an agency conducting noise analyses for transportation projects is entitled to deference. See Town of Cave Creek, Ariz. v. FAA, 325 F.3d 320, 332 (D.C. Cir. 2003); Citizens Against Burlington, Inc. v. Busey, 938 F.2d 190, 200-01 (D.C. Cir. 1991); Sierra Club v. Dep't of Transp., 753 F.2d 120, 128 (D.C. Cir. 1985). FHWA's Section 4(f) determination is likewise entitled to deference. Allison v. Dep't of Transp., 908 F.2d 1024, 1031 (D.C. Cir. 1990). Plaintiffs' argument is thus contrary to controlling precedent.

In an attempt to avoid this precedent, Plaintiffs argue that this case is different because it involve a "noise analysis by another agency [NPS]" and that NPS, as the "federal agency charged with administering parks and wild and scenic rivers," is the agency that should be "entitled to deference" in this case. Pls. Reply at 16. There are a number of flaws with this argument. As an initial matter, Plaintiffs are incorrect that NPS administers the Little Miami River under the Wild and Scenic Rivers Act ("WSRA"). Rather, rivers designated under the WSRA are managed by

11

the state within which they are found, and the Ohio Department of Natural Resources ("ODNR") manages the Little Miami River under the WSRA. 16 U.S.C. § 1273(a)(ii); Ohio Rev. Code § 1517.02; see also AR 47727-28. Thus, while NPS' comments clearly should have been and were considered by FHWA in preparing the FEIS and ROD, they are not owed any special deference on the basis that NPS is the manager of the Little Miami River, because it is not.

Moreover, FHWA coordinated with ODNR throughout the planning of the project. AR 47728. Responding to comments by the Sierra Club before the NEPA process began, ODNR noted that its Scenic River Program Manager, Bob Gable, had participated directly in the three-year long MIS process. AR 47604. Through that process, Mr. Gable, on behalf of ODNR, demanded that certain mitigation measures be included in any plan for a new bridge: (1) land adjacent to the Little Miami would be purchased or placed in a conservation easement to protect the river in perpetuity, (2) a new bridge would be constructed so as to clear-span the river with elevation of all roadway sections above the 100-year floodplain event, and (3) implementation of the most stringent "Best Management Practices for Bridge Construction." AR 47604-05. With those measures in place, ODNR stated that "we are confident that the mitigation outlined above will protect this segment of the Little Miami from further degradation while still allowing the new bridge go be completed." AR 47605. Therefore, not only is NPS not the manager of the Little Miami River, its opinions regarding the potential environmental impacts of a new bridge across the river are contradicted by ODNR, the agency that does manage the river.

Moreover, even if NPS were the manager of the river, it is FHWA that is entitled to deference here, not NPS. By its very nature, Section 4(f) will often involve consideration of whether park land (which may be administered by NPS or other land management agency) will

12

be affected by a transportation project. Yet, Plaintiffs can cite no case holding that the resource management agency, not the agency planning the project, is entitled to deference. Because Plaintiffs rely heavily on NPS' comments on the Eastern Corridor Project during and after the NEPA process, they urge this theory of deference to the commenting agency on the Court. But, it simply has no legal basis. The law is clear that the lead agency must consider the input of other agencies in its analysis in an EIS, including incorporated analysis under Section 4(f), but it is not required to follow those comments. Citizens Against Burlington, 938 F.2d at 201. FHWA thoroughly considered the extensive comments submitted by NPS, but it was not required to agree with NPS' conclusion regarding Section 4(f), a statute implemented by FHWA. FHWA has complied with its regulations implementing Section 4(f), and this Court should defer to FHWA. See Marsh, 490 U.S. at 378 ("When specialists express conflicting views, an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find a contrary view more persuasive.").

Plaintiffs also argue that FHWA should have categorized the relevant segment of the Little Miami River as a Category B noise receptor, instead of Category A, under its noise abatement regulations. Pls. Reply at 18-19. FHWA's decision interpreting its own regulations is entitled to deference. See, e.g., Wyo. Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 52 (D.C. Cir. 1999) ("agency's interpretation of its own regulations is entitled to substantial deference . . . [and] [t]hat 'broad deference is all the more warranted when . . . the regulation concerns a complex and highly technical regulatory program.'" (quoting Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (internal quotations omitted). While Plaintiffs have expressed strong disagreement with FHWA's interpretation of its own regulations, they have not

13

shown that FHWA's interpretation was arbitrary or capricious.

Both Categories A and B include parkland. See 23 C.F.R. § 772.19(c), Table 1. However, Category A is reserved for "Lands on which serenity and quiet are of extraordinary significance and serve an important public need and where the preservation of those qualities is essential if the area is to continue to serve its intended purpose." Id. FHWA was well within its discretion to find that the relevant segment of the Little Miami River was not a Category A noise receptor. As the record clearly shows, the area is not quiet to begin with – there is substantial urbanization along this segment of the river and there is a substantial amount of noise generated from manmade sources. AR 9524, 47708, 47865. Other than Dr. Fristrup's critique, which was submitted after the ROD issued and has no data showing ambient noise levels near the proposed bridge crossing, Plaintiffs point to nothing in the administrative record showing that serenity and quiet now exist along this segment of the Little Miami River, such that it should be classified as a Category A noise receptor.

Plaintiffs are incorrect when they say that FHWA has "mischaracterized the river as nothing special." Pls. Reply at 19. From the beginning of the planning for the Eastern Corridor Project, FHWA has recognized the significance of the Little Miami River and the fact that it is designated as a recreational river under the WSRA. FHWA has recognized that the river is a Section 4(f) resource and has required a bridge design – a clear-span of the river – to avoid in-stream impacts of the river, and has thus complied with WSRA § 7. AR 47715-16; see also 16 U.S.C. § 1278. Plaintiffs do not dispute this finding, and yet they repeatedly assert, without basis, that FHWA has ignored the river's designation and imply that FHWA has violated the WSRA. It has not, and Plaintiffs' suggestions to the contrary should be ignored by this Court.

14

Furthermore, Plaintiffs' assertions that canoeing and kayaking will be affected by a new bridge, Pls. Reply at 19, ignore the much greater impacts that Plaintiffs' preferred option (the expansion of the Beechmont Levy bridge) would have on navigation in the river. Expanding the Beechmont Levy bridge would likely require the use of in-stream piers and would stretch over 1200 feet of river, as opposed to no in-stream piers and only 400 feet of river in the option selected by FHWA. AR 47745-46. Thus, FHWA has carefully considered the potential impacts on recreation activity on the river and selected an option that would minimize impacts to those activities.

Finally, Plaintiffs' assertion that FHWA did not consider visual impacts of a new bridge is without basis. See Pls. Reply at 19-25. FHWA considered the current view from areas on and around the bridge and noted the existence of substantial urban blight, including a landfill, a sewer line, agricultural activity, electrical wires, and a railroad bridge crossing. AR 47707. FHWA also considered that "[a] new structure over the Little Miami River at a location where a bridge does not currently exist may result in a visual impact depending on the final configuration and location of crossing and proximity to observers." AR 47708. However, the scenic value in the project area may be improved by the removal of the Hafner landfill and other riparian disturbances through project mitigation developed with local input. Id. Moreover, the assistance manual for the lower Little Miami River (which encompasses the relevant segment of the river) specifically contemplates a new bridge crossing in the Horseshoe Bend area. AR 9101-02. Accordingly, FHWA determined that a new bridge would be consistent with current land uses and would not substantially impair visual and scenic qualities under Section 4(f). AR 47717.

Furthermore, as FHWA recognized, given the recreational designation of the river under

15

the WSRA and that the most common recreational uses of the river are canoeing and kayaking, the more relevant inquiry is whether the visual and scenic experience of boaters on the river will be affected. FHWA reasonably determined that a clear-span bridge will not interfere with canoeing and kayaking and will not substantially impair the visual experience on the river. AR 47717. Views of a new bridge from the water would be very limited because the bridge would be raised above the banks, and boaters would only see the bridge for a very brief period. AR 1718. Attempting to distinguish Geer v. Federal Highway Admin., 975 F. Supp. 47 (D. Mass. 1997), Plaintiffs argue that the Little Miami River is different because it is not in an "urban context." Pls. Reply at 22. This assertion is wholly at odds with the record in this case and the obvious fact that the lower Little Miami River flows through the Cincinnati area. Indeed, Plaintiffs admit elsewhere in their brief that the lower Little Miami River "flows through a major metropolitan area." Id. at 2.

In conclusion, FHWA's interpretation of its regulations and the methodology that it chooses to employ in conducting noise analyses are entitled to deference. While Plaintiffs have shown that they disagree with FHWA's finding under Section 4(f) regarding potential noise and visual impacts of constructing a new bridge across the Little Miami River, they have not shown that FHWA's findings were arbitrary and capricious. Accordingly, FHWA's findings under Section 4(f) should be upheld.

### E.    Conclusion

Plaintiffs have failed to demonstrate that FHWA failed to comply with NEPA in the preparation of its EIS or that it violated Department of Transportation Act Section 4(f). Given the purpose and need of the Eastern Corridor Project to develop a multi-modal strategy for

16

addressing the long range transportation needs of the region, and in particular to reduce

congestion and delay and address safety issues, FHWA properly rejected alternatives that would

not meet those goals.  FHWA also properly considered whether the submission of additional

critique by NPS constituted significant new information requiring the preparation of a

supplemental EIS and concluded that it did not.  FHWA's economic analysis was reasonable, and

FHWA properly balanced economic and environmental considerations in determining whether to

go forward with the project.  Finally, FHWA's findings under Section 4(f), which are entitled to

substantial deference, were reasonable based on the substantial mitigation that is included in the

project, including the commitment to a bridge design that clear-spans the Little Miami River and

therefore avoids in-stream impacts.

Accordingly, for all the reasons stated in FHWA's opening brief and its reply, FHWA

requests that its Motion for Summary Judgment be granted and that Plaintiffs' Motion for

Summary Judgment be denied.


Dated: September 14, 2007                     Respectfully submitted,

                                              RONALD J. TENPAS
                                              Assistant Attorney General
                                              Environment and Natural Resources Division

                                              /s/ Luther L. Hajek
                                              LUTHER L. HAJEK
                                              United States Department of Justice
                                              Environment and Natural Resources Division
                                              Natural Resources Section
                                              P.O. Box 663
                                              Washington, D.C. 20044-0663
                                              Tel: (202) 305-0492
                                              Fax: (202) 305-0274

OF COUNSEL:

GLENN HARRIS
Federal Highway Administration
Assistant Midwest Counsel
19900 Governors Drive
Suite 301
Olympia Fields, IL 60461
Tel.: (708) 283-3561
Fax: (708) 283-3508