**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| RIVERS UNLIMITED, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.  1:06-CV-01775-JR |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| TRANSPORTATION, *et al.*, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OHIO DEPARTMENT OF TRANSPORTATION, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| _____ | ) | |

---

**DEFENDANT-INTERVENOR OHIO DEPARTMENT OF TRANSPORTATION'S
REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

---

MARC DANN
Attorney General of Ohio
FREDERICK C. SCHOCH
Trial Attorney
Assistant Attorney General
Transportation Section
150 East Gay St., 17th Floor
Columbus, Ohio 43215-3130
Phone:        (614) 466-4656
Fax:           (614) 466-1756
fschoch@ag.state.oh.us

FRED R. WAGNER
Outside Counsel to Ohio Department
of Transportation
D.C. Bar No. 416009
Beveridge & Diamond, P.C.
1350 I Street, NW, Suite 700
Washington, D.C. 20005-3311
Phone:        (202) 789-6041
Fax:           (202) 789-6190
fwagner@bdlaw.com

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.      PLAINTIFFS FAIL TO CARRY THEIR BURDEN OF DEMONSTRATING
ARBITRARY OR CAPRICIOUS AGENCY ACTION............................................. 3

     A.    FHWA Properly Excluded Option 2 From Consideration in the Tier 1 EIS.......... 3

          1.    FHWA Must Evaluate Alternatives Within the Context of the
Multi-Modal Tier 1 Scheme. ................................................................... 3

          2.    FHWA Properly Excluded Option 2 Because It Does Not Meet the
Project's Purpose and Need....................................................................... 5

     B.    A Supplemental EIS Is Not Warranted Because the NPS Comments and
Noise Study Do Not Present New Information that Provides a Seriously
Different Picture of the Environmental Landscape............................................... 9

II.     PLAINTIFFS FAIL TO CARRY THEIR BURDEN OF DEMONSTRATING
THAT FHWA IMPROPERLY DETERMINED THAT A NEW BRIDGE
CROSSING WILL NOT CONSTRUCTIVELY USE THE LITTLE MIAMI
RIVER         .................................................................................................. 14

     A.    FHWA Properly Found No Constructive Use from Noise Impacts.................... 14

          1.    FHWA's Conclusion that a New Bridge Would Not Constitute a
Constructive Use Is Entitled to Deference ............................................... 14

          2.    FHWA Properly Classified the Little Miami River as a Category
B Noise Receptor...................................................................................... 16

     B.    FHWA Properly Found No Constructive Use from Visual or Recreational
Impacts.................................................................................................................. 18

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

American Lung Ass'n v. EPA,
134 F.3d 388 (D.C. Cir. 1998) ............................................................. 16

*City of Alexandria v. Slater,
198 F.3d 862 (D.C. Cir. 1999) .................................................... 7, 8, 16

Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs.,
844 F. Supp. 770 (D.D.C. 1993) ............................................................ 9

*Geer v. Fed. Highway Admin.,
975 F. Supp. 47 (D. Mass. 1997) .......................................................... 19

*The Laguna Greenbelt, Inc. v. United States Dep't of Transp.,
42 F.3d 517 (9th Cir. 1994) ........................................................... 19, 20

Mount Royal Joint Venture v. Kempthorne,
477 F.3d 745 (D.C. Cir. 2007) ............................................................. 15

Nat'l Comm. for the New River, Inc. v. FERC,
373 F.3d 1323 (D.C. Cir. 2004) ........................................................... 10

Natural Resources Defense Council v. Lujan,
768 F. Supp. 870 (D.D.C. 1991) .................................................. 10, 12, 13

Nevada v. DOE,
457 F.3d 78 (D.C. Cir. 2006) ................................................................ 4

Sierra Club v. Froehlke,
816 F.2d 205 (5th Cir. 1987)........................................................... 10, 11

*Sierra Club v. United States Dep't of Transp.,
310 F. Supp. 2d 1168 (D. Nev. 2004) ..................................................... 6

**Statutes**

49 U.S.C. § 303 ...................................................... 2, 3, 14, 16, 17, 20

**Regulations**

23 C.F.R. § 771.111..................................................................................................... 4, 5

23 C.F.R. § 771.135....................................................................................................... 18

23 C.F.R. § 772 Table 1................................................................................................. 17

40 C.F.R. § 1502.20........................................................................................................ 4

40 C.F.R. §1508.27......................................................................................................... 12

40 C.F.R. § 1508.28........................................................................................................ 4

## INTRODUCTION

In its simplest form, this case weighs Plaintiffs' misperception of the issues surrounding the Federal Highway Administration's ("FHWA") Tier 1 Environmental Impact Statement ("EIS") against the reality that FHWA properly followed the applicable legal standards in conducting its Tier 1 review. Viewing the parties' dispute in this light, it is readily apparent that Plaintiffs' misperceptions do not satisfy their burden to demonstrate that FHWA's decision approving the Tier 1 EIS is arbitrary or capricious. Accordingly, the Court should dismiss Plaintiffs' Complaint.

Plaintiffs would have this Court share their perception that this dispute centers on an EIS for construction of a bridge across the Little Miami River and that the alternatives analysis that FHWA is required to perform under the National Environmental Policy Act ("NEPA") must be structured accordingly. In reality, the Tier 1 EIS challenged by Plaintiffs supports a much broader FHWA decision to proceed with a multi-modal project ("Eastern Corridor Project" or "Project") to address the wide-ranging transportation needs in and around the eastern metropolitan and suburban areas of Cincinnati, Ohio ("Eastern Corridor" or "Corridor"). A new bridge over the Little Miami River is but one element of the multi-modal Project designed to address the transportation needs of the area. At the Tier 1 stage, which looks broadly at the Project as a whole, Plaintiffs' focus on Option 2 is too narrow and ignores the fact that it and other elements were previously considered and rejected at the Major Investment Study ("MIS") phase because they do not work as effectively within the overall framework of the Eastern Corridor Project.

Plaintiffs also have an unrealistic view of the resource at issue. They perceive much of the lower segment of the Little Miami River to be "natural and undisturbed,"[1] and contend that a new bridge crossing contemplated in the Tier 1 EIS will impact the attributes of the entire 28-mile segment of the River that led to its designation as a National Wild and Scenic River. Plaintiffs' principal focus of concern, however, is the Horseshoe Bend section of the River, and they deftly juxtapose references to this "rare stretch of the river," this "fairly undisturbed segment of Little Miami River Valley," or the "relatively undisturbed Horseshoe Bend section of the Little Miami River"[2] with references to the entire 28-mile segment of the River[3] to confuse this issue.

Plaintiffs' perception of the attributes of the River finds little support in the Administrative Record. In fact, it is contradicted by objective data, like a noise analysis performed by ODOT ("ODOT Noise Analysis Study"), collected by FHWA to consider impacts to the River. Plaintiffs mistakenly apply their own subjective perspective of the River and its attributes to bolster their argument that a new bridge crossing will constitute a constructive use of the River under Section 4(f) of the Department of Transportation Act, 49 U.S.C. § 303

---

[1] Plaintiffs chide the Ohio Department of Transportation ("ODOT") for asserting that Plaintiffs have characterized the Little Miami River as "pristine or untouched." Plaintiffs' Reply Brief in Support of Motion for Summary Judgment [37], filed August 31, 2007 ("Plaintiffs' Reply Brief") at 2 ("while ODOT makes this assertion it provides no citation to Plaintiffs' briefing in support because Plaintiffs have never made such characterizations."). Yet a mere two sentences later Plaintiffs state that "this case is about whether FHWA properly assessed the impacts of a transportation project that poses to eradicate one of two stretches of *natural and undisturbed* river segments...." Id. (emphasis added).

[2] Id. at 19 - 20.

[3] See, e.g., id. at 21 ("NPS continuously alerted FHWA that the project would impact the recreation attributes of the river.... ").

("Section 4(f)"). Plaintiffs' beliefs, no matter how sincerely held, do not suffice to carry their burden of proof under the Administrative Procedure Act.

Plaintiffs also give the erroneous impression that their preferred bridge location under Option 2 would have little or no environmental impact while the Option 1 bridge would have significant impact. The reality is that expansion of the Beechmont Levee crossing under Option 2 would have substantial impacts on the River and its users, including new in-stream piers, increased noise and visual impacts, and more impact on Section 4(f) resources than Option 1.

If the Court focuses on reality as reflected in the Administrative Record and not on Plaintiffs' unsupported perceptions, it will conclude that FHWA and ODOT (collectively the "lead agencies") have satisfied the requirements of NEPA and Section 4(f) for the Tier 1 EIS.

## ARGUMENT

I.    PLAINTIFFS FAIL TO CARRY THEIR BURDEN OF DEMONSTRATING ARBITRARY OR CAPRICIOUS AGENCY ACTION.

   A.    FHWA Properly Excluded Option 2 From Consideration in the Tier 1 EIS.

FHWA should not be required to go back and review Option 2 in greater detail. Such detailed, site-specific review of elements of the Project, taken outside the context of the multi-modal Project as a whole, is inappropriate during Tier 1, the focus of which is on broad issues like modal choice. Further, Option 2 was evaluated and properly rejected during the MIS phase because it did not meet the Study's objectives, and FHWA found that Option 2 does not meet the Project's purpose and need.

   1.    FHWA Must Evaluate Alternatives Within the Context of the Multi-Modal Tier 1 Scheme.

Plaintiffs' narrow focus on Option 2 as a reasonable alternative distorts the lens through which this Court must view the adequacy of the lead agencies' consideration of alternatives

during the Tier 1 NEPA process.  The Eastern Corridor EIS was proposed pursuant to Council on

Environmental Quality regulations governing the use of tiering in the NEPA process, see 40

C.F.R. § 1502.20, which is particularly "appropriate" for "major transportation projects" like the

Eastern Corridor Project, 23 C.F.R. § 771.111(g); see also 40 C.F.R. § 1508.28.  Here, the

Eastern Corridor EIS, a broad, programmatic review, identifies how best to meet the Project's

purpose -- to implement a multi-modal transportation program consistent with a long-range plan

for the Eastern Corridor.  Administrative Record ("AR")[4] 47692 - 95; 23 C.F.R. § 771.111(g)

("The first tier EIS would focus on broad issues such as general location, mode choice, and

areawide air quality and land use implications of the major alternatives.  The second tier would

address site-specific details."); Nevada v. DOE, 457 F.3d 78, 92 (D.C. Cir. 2006) ("A

programmatic EIS reflects the broad environmental consequences attendant upon a wide-ranging

federal program.  The thesis underlying programmatic EISs is that a systemic program is likely

to generate disparate yet related impacts....  Whereas the programmatic EIS looks ahead and

assimilates 'broad issues' relevant to [the project], the site-specific EIS addresses more

particularized considerations.").

    During the MIS process, emphasis was placed on establishing "packages," or sets of

transportation improvements for the Corridor, which was necessary to develop approaches to the

varied transportation issues facing the entire Corridor and to obtain a manageable number of

alternatives for more in-depth study.  AR 47940.  A combination of the five modes identified in

the MIS process -- transportation system management, rail, highway, bus, and bike -- was

evaluated during the Tier 1 process.  AR 47697 - 700.  Each mode is composed of interlocking

---

[4] All citations are to the supplemental Administrative Record [30] lodged with this Court
on June 12, 2007.

elements; for example, the highway improvements are divided into four elements, one of which is a proposed crossing of the Little Miami River. AR 47698 - 99. While each element is relevant to the feasibility of the mode, the function of the Tier 1 process was to evaluate the feasibility of all five modes. AR 47686 - 90.

Were FHWA required to evaluate Option 2 in the manner Plaintiffs request, the Tier 1 EIS would change from a broad analysis of the feasibility of various modes of transportation in the Eastern Corridor to a narrow, site-specific document examining the feasibility of a crossing over the Little Miami River. The latter focus is contrary to the aim of preparing a Tier 1 EIS. 23 C.F.R. § 771.111(g). A bridge crossing is only one element of the multi-modal improvements needed in the Eastern Corridor and that are the focus of the Tier 1 review. AR 47697 - 700. Thus, while Option 2 may be feasible in a vacuum, the lead agencies properly considered a bridge crossing instead in the context of the larger program of transportation improvement alternatives.

In short, forcing FHWA to elevate the consideration of one element of the Project, like a Little Miami River crossing, without consideration of how the element interrelates to all the transportation modes, would put the cart before the horse. Plaintiffs' interpretation of a Tier 1 EIS would deprive the public and the agency decision-makers of knowing how these elements work together and whether the transportation modes identified in the MIS process was reasonable and feasible.

> 2.     FHWA Properly Excluded Option 2 Because It Does Not Meet the Project's Purpose and Need.

While Plaintiffs contend that Option 2 was not adequately reviewed, in fact Option 2 received the requisite "hard look" during the MIS process and was eliminated from further review because it did not meet the objectives identified in the MIS recommended plan. FHWA

properly relied on the MIS process and did not proceed with further analysis of Option 2 during the NEPA process.  See Sierra Club v. United States Dep't of Transp., 310 F. Supp. 2d 1168, 1193 (D. Nev. 2004) (finding that FHWA's reliance on the MIS process to consider and eliminate alternatives was not arbitrary and capricious because the MIS process contained many of the hallmarks of the NEPA process).  See Memorandum of Points and Authorities in Support of Defendant-Intervenor Ohio Department of Transportation's Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment [33], filed August 10, 2007 ("ODOT's Opening Brief") at 27 - 29.  Plaintiffs utterly fail to distinguish this authority.

In their Reply Brief, Plaintiffs relegate their response to Sierra Club to a footnote in which they "question whether an agency can appropriately rely on an MIS to fully dismiss an alternative from consideration."  Plaintiffs' Reply Brief at 7 n. 4.  That question, however, was answered in the affirmative by the Sierra Club court on facts strikingly similar to those presented here, and Plaintiffs have cited no authority to the contrary or raised new issues not considered by the Sierra Club court that might possibly distinguish the analysis contained in that decision.

Plaintiffs argue in the alternative that Sierra Club "is inapplicable to the facts present here because the finding is limited to dismissing alternatives that do not meet the purpose and need," and according to Plaintiffs, Option 2 meets the Project's purpose and need.  Id.  As an initial matter, the holding in Sierra Club is not explicitly limited to dismissing alternatives that do not meet a project's purpose and need.  The fact that the project at issue in Sierra Club did not meet purpose and need was only one of several factors, including the project's cost and the similarities between the MIS and NEPA processes, that the court considered in holding that FHWA's reliance on the MIS process to eliminate alternatives from the EIS was not arbitrary and capricious.  310 F. Supp. 2d at 1193.

Further, Plaintiffs have failed to demonstrate that Option 2 meets the Project's purpose and need. Plaintiffs offer three arguments in an effort to make that showing. First, they assert that Option 2 "meets the 2020 traffic volume projections." Plaintiffs' Motion for Summary Judgment and Incorporated Memorandum of Points and Authorities in Support Thereof [31], filed June 25, 2007 ("Plaintiffs' Opening Brief") at 17. This argument misses the mark, as one of the needs of the Project is to *reduce* highway congestion and delay by 2020, not just allow congestion to remain at today's levels. AR 47695. Option 2, as Plaintiffs acknowledge, will not do so. See Plaintiffs' Opening Brief at 17 ("While [Option 2] may approach traffic volume capacity in 2020.... "). In short, Option 2 does not meet the need to reduce congestion and delay and therefore is neither a complete solution to the problem nor a reasonable alternative. City of Alexandria v. Slater, 198 F.3d 862, 869 (D.C. Cir. 1999) (as consideration of reasonable alternatives for project required "an assessment of traffic needs in 2020," and proposal advocated by plaintiffs did not meet traffic needs in 2020, "it is simply a *non sequitur* to call [such a] proposal that does not 'offer a complete solution to the problem' a 'reasonable alternative.'").

Second, Plaintiffs rely on statements taken from the Administrative Record which purport to show that Options 1 and 2 "perform similarly" and "produce significant travel benefits." Plaintiffs' Reply Brief at 7. These statements, however, are taken out-of-context, as Plaintiffs failed to quote the entire sentence. AR 48020 ("While both options produce significant travel benefits, *Option 1 performs more efficiently*;" "Option 2 performs similarly to the Option 1, *but carries less volume along the relocated SR 32 portion*.") (emphasis added). The second half of each sentence demonstrates that Option 2 did not meet the purpose and need of the MIS, which was the overall conclusion of the MIS Task Force.

Third, Plaintiffs attempt to distinguish <u>City of Alexandria</u>.  The arguments Plaintiffs raise are based on purported factual differences between <u>City of Alexandria</u> and this case, but Plaintiffs fail to go the necessary step further and explain how these factual differences render the legal principles set forth in <u>City of Alexandria</u> inapplicable.  For example, Plaintiffs state that "<u>City of Alexandria</u> provides little direction in this case because its purpose was extremely narrow -- to increase capacity over the Woodrow Wilson bridge."  Plaintiffs' Reply Brief at 6. But the purported narrowness of the project at issue in <u>City of Alexandria</u> does not distinguish the legal principle for which ODOT cited <u>City of Alexandria</u>: a proposal that does not offer a complete solution to an agency's stated objectives is not a reasonable alternative that can meet a project's purpose and need.

In contrast to Plaintiffs' unavailing arguments, the record here demonstrates that the MIS Task Force properly determined that Option 2 does not meet the objectives of the MIS recommended plan.  AR 47083 - 85; 48019 - 23.  The purpose of the MIS was to address travel needs in the Eastern Corridor and was motivated by wide-ranging transportation problems associated with that area.  AR 47876.  Specifically, the MIS Task Force found the Eastern Corridor was characterized by insufficient capacity, limited transportation options, and inadequate linkage to the region's key transportation corridors.  AR 47084; 47915 - 17.

As a result of these identified needs, the Task Force gave consideration to the ability of each alternative to improve regional travel effectiveness as measured by a reduction in congestion, safety problems, delay, and vehicle miles traveled.  AR 47084; 47915 - 17.  The Task Force eliminated Option 2 because it would attract more east-west traffic to a single point -- the Beechmont Levee bridge -- which would exacerbate the capacity and safety problems without adding a new east-west travel route; it would not solve the local systems-level problems,

resulting in circuitous travel along the interstate system and 500,000 additional vehicle operating hours per day when compared to Option 1; and it would not reduce congestion or delay substantially by the year 2020, now only 13 years away. AR 47084 - 85; 48019 - 25. In other words, Option 2 does not improve regional travel effectiveness, and therefore, does not meet the objectives identified by the Task Force. Moreover, FHWA determined that Option 2 will not meet the Project's purpose and need. See Defendants' Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment [34], filed August 10, 2007 ("FHWA's Opening Brief") at 14 - 15; ODOT's Opening Brief at 26 (discussing Record evidence in greater detail). This Record evidence directly contradicts Plaintiffs' assertions, see, e.g., Plaintiffs' Reply Brief at 4, that FHWA and ODOT have failed to provide support for the proposition that Option 2 does not meet the Project's purpose and need.

In sum, it is Plaintiffs' burden to establish that Option 2 meets the Project's purpose and need. See Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health and Human Servs., 844 F. Supp. 770, 783 (D.D.C. 1993) (holding that under the arbitrary and capricious standard, the party challenging the agency actions bears the burden of proof). Plaintiffs have failed to satisfy their heavy burden on this issue. Indeed, the Record supports FHWA's conclusion that Option 2 does not meet the Project's purpose and need.

B.    A Supplemental EIS Is Not Warranted Because the NPS Comments and Noise Study Do Not Present New Information that Provides a Seriously Different Picture of the Environmental Landscape.

Plaintiffs contend that comments and a noise study, submitted by NPS to FHWA after issuance of the Record of Decision ("ROD"), contain new, significant information that warrants the preparation of a Supplemental EIS ("SEIS"). The comments that Plaintiffs reference are not new. Rather, they had been provided to FHWA on several occasions throughout the NEPA

process, and FHWA has adequately addressed this information each time it was raised.  Further, neither the noise study nor the comments provide "'a seriously different picture of the environmental landscape,'" the standard that must be met to trigger a SEIS.  Nat'l Comm. for the New River, Inc. v. FERC, 373 F.3d 1323, 1330 (D.C. Cir. 2004) (citation omitted).  Accordingly, the Court should dismiss this claim.

In their Reply Brief, Plaintiffs acknowledge that the foregoing standard controls when a SEIS is required.  Plaintiffs' Reply Brief at 9.  One paragraph later, however, Plaintiffs contend that the study at issue "need not contain 'new data' in order for its critique to qualify as significant information," and, citing Natural Resources Defense Council v. Lujan, 768 F. Supp. 870 (D.D.C. 1991) ("NRDC"), imply that any information that affects the decision-making process, regardless of whether it seriously changes the environmental landscape, warrants a SEIS.  Plaintiffs' Reply Brief at 10.  Plaintiffs are mistaken.

NRDC applies the District of Columbia Circuit ("D.C. Circuit") standard to determine when a SEIS is warranted.  Id. at 886.  The statement regarding information that affects the decision-making process is taken from the court's discussion of whether the change must be "strictly environmental," but in no way affects the standard.  Id. at 886 - 89.  Further, the statement Plaintiffs rely on is taken from a Fifth Circuit decision, Sierra Club v. Froehlke, 816 F.2d 205 (5th Cir. 1987), that rejected a request to prepare a SEIS.

In Froehlke, the court was presented with the unique situation of judging whether the United States Army Corps of Engineers ("Corps") acted reasonably in subjecting an internal, post-ROD document that was inadvertently referenced in a Congressional report authorizing the project at issue to post-hoc NEPA review.  Plaintiffs argued that the Corps should have issued a SEIS for the document at issue.  Applying the same standard utilized by the D.C. Circuit, the

Fifth Circuit concluded that a SEIS was not required because the internal document did not seriously alter the environmental picture. Id. at 211. Turning to the reasonableness of the Corps' actions, the court stated that because the document affected the decision-making process, it was subject to NEPA review, and concluded that the Corps' post-*hoc* NEPA review was reasonable given the unique circumstances of the case. Id. at 211 - 12. In short, the *dicta* holding in Froehlke is inapplicable to how this Court should review Plaintiffs' SEIS claim.

More importantly, Plaintiffs' concerns are not new. The post-ROD comments submitted by NPS were raised previously in an April 2005 letter from the United States Department of the Interior ("DOI") to FHWA, as well as at various other times during the NEPA process. Further, FHWA responded to these comments both before the Final EIS ("FEIS") was issued and in the FEIS. See, e.g., ODOT's Opening Brief at 33. In their Reply Brief, Plaintiffs agree that "the issues presented by NPS are certainly not new," and limit their discussion of the issues raised in the NPS comments to a footnote that merely re-packages Plaintiffs' argument regarding visual impacts, Plaintiffs' Reply Brief at 10, which was already addressed and negated in the lead agencies' briefs, see FHWA's Opening Brief at 30; ODOT's Opening Brief at 31 - 33. In short, Plaintiffs fail to rebut the lead agencies' argument that the comments do not raise new information that presents "a seriously different picture of the environmental landscape."

Plaintiffs' principal focus remains the NPS noise study, which they use for the proposition that ODOT's analysis of noise impacts, relied on by FHWA for the conclusion of no constructive use of the Little Miami River, was deficient. In turn, they argue, because ODOT's Noise Analysis Study is deficient, there is a constructive use of the Little Miami River, and because there is a constructive use of the Little Miami River, "the environmental landscape is

indeed significantly different" so as to warrant a SEIS. Plaintiffs' Reply Brief at 11. Plaintiffs' rationale is flawed.

Underlying Plaintiffs' argument is their belief that the ODOT Noise Analysis Study is deficient. As demonstrated *infra* at 15 - 16, the Noise Analysis Study was reasonable. More importantly, the issues raised by the NPS noise study, which is the sole piece of information on which Plaintiffs' rely in making their argument that a SEIS is warranted, are neither new nor so significant as to seriously alter the environmental landscape. See FHWA's Opening Brief at 30; ODOT's Opening Brief at 31 - 33.

The foregoing standard is exacting. Regulations define "significantly" as including "considerations of both context and intensity." 40 C.F.R. § 1508.27. Intensity refers to the severity of the impact, and the following factors, *inter alia*, must be considered in evaluating intensity: the degree to which the proposed action affects public health or safety; the degree to which the effects on the quality of the human environment are likely to be highly controversial; and the degree to which the action may adversely affect an endangered or threatened species or its habitat that has been determined to be critical under the Endangered Species Act of 1973. Id. § 1508.27(b). The NPS noise study, however, does not evaluate, let alone address, the severity of the noise impacts on the Little Miami River; that is, it does not consider the foregoing factors before reaching a conclusion that, for example, the noise impacts will be moderate or severe. In fact, the NPS noise study reaches no conclusion regarding noise impacts; rather, it simply addresses the adequacy of ODOT's Noise Analysis Study.

The intensity of the changes or new information necessary for the preparation of a SEIS is exemplified by the decision in NRDC, 768 F. Supp. 870. In that case, the court ordered a SEIS because (1) the agency considered the information significant, and (2) it changed the

assessment of oil reserves in the Arctic National Wildlife Refuge in Alaska by "340,000,000 barrels of oil." Id. at 886 - 889. Here, FHWA did not consider the NPS noise study significant, and the relatively minor shades of differences represented in the NPS noise study are proportionately tiny when compared to a major change in circumstances like an under-assessment of one-third of a billion barrels of oil. In short, Plaintiffs have failed to meet their burden of demonstrating that the NPS noise study presents new and significant information so as to warrant a SEIS.

Finally, noise and visual impacts are precisely the types of issues that will be examined and addressed in greater detail in the individual site-specific NEPA documents (*e.g.*, an environmental assessment or an EIS for a bridge crossing of the Little Miami River) generated during the Tier 2 process. Requiring a SEIS now on these issues would be duplicative and inefficient because until the final alignments and specific locations for modal improvements are put in place during Tier 2, all FHWA can do is what they have already done -- conduct a generalized, project-level assessment of noise and visual impacts in a manner consistent with the goals of the Tier 1 process. And assuming *arguendo* that there would be some impact from noise, mitigation opportunities would be explored, and mandated if necessary, through the Tier 2 process on which Plaintiffs will have sufficient opportunity to comment.

In sum, Plaintiffs have not demonstrated that the NPS study presents "a seriously different picture of the environmental landscape." Accordingly, a SEIS is not warranted in this case, and the Court should dismiss this claim.

II.    PLAINTIFFS FAIL TO CARRY THEIR BURDEN OF DEMONSTRATING THAT
FHWA IMPROPERLY DETERMINED THAT A NEW BRIDGE CROSSING WILL
NOT CONSTRUCTIVELY USE THE LITTLE MIAMI RIVER.

Plaintiffs contend that a new bridge crossing in the Horseshoe Bend area of the Little
Miami River will constructively use the River in violation of Section 4(f). Plaintiffs, however,
have failed to show that a new bridge crossing will substantially impair those features of the
River that qualify it for protection under Section 4(f). While Plaintiffs challenge the adequacy of
FHWA's Section 4(f) determination regarding the noise, visual,[5] and recreational impacts a new
bridge will have on the River, they fail to adduce evidence in the Record or legal authority to
support these arguments. Accordingly, the Court should dismiss Plaintiffs' Section 4(f) claim.

A.    FHWA Properly Found No Constructive Use from Noise Impacts.

Plaintiffs' Section 4(f) argument is premised on the assertion that FHWA improperly
analyzed potential noise impacts from a new bridge across the Little Miami River. In their Reply
Brief, Plaintiffs argue that FHWA is not entitled to deference in its constructive use
determination, and that FHWA improperly classified the Little Miami River as a Category B
noise receptor. Plaintiffs are mistaken on both accounts.

1.    FHWA's Conclusion that a New Bridge Would Not Constitute a
Constructive Use Is Entitled to Deference.

Plaintiffs contend that the methodology employed by FHWA in arriving at its Section
4(f) conclusions regarding noise impacts was arbitrary because FHWA relied on a purportedly
deficient ODOT Noise Analysis Study, and therefore, FHWA "should not be given any
deference in [its] constructive use determination." Plaintiffs' Reply Brief at 15. Plaintiffs'

---

[5] Plaintiffs appear to use the words "visual" and "scenic" interchangeably. For
simplicity, ODOT will use only the word "visual."

underlying assumption regarding the adequacy of ODOT's Noise Analysis Study, however, is incorrect, thus undercutting their argument that FHWA's reliance thereon was arbitrary.

For agency action to be arbitrary or capricious, Plaintiffs must show that the agency "'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  Mount Royal Joint Venture v. Kempthorne, 477 F.3d 745, 753 (D.C. Cir. 2007) (citation omitted).  Here, Plaintiffs argue that the ODOT Noise Analysis Study is deficient because it "'does not meet the basic requirements for sound monitoring projects, including the protocols that have been recommended and agreed upon by the Federal Interagency Committee on Aircraft Noise.'"  Plaintiffs' Reply Brief at 15.  The "basic requirements" they cite, however, are NPS requirements, see AR 8157, not the relevant criteria for determining decibel levels under FHWA noise abatement regulations, see FHWA's Opening Brief at 34 - 36.  In short, FHWA regulations establish the standards by which ODOT must perform its Noise Analysis Study, not NPS requirements or protocols established by the Federal Interagency Committee on Aircraft Noise,[6] and therefore, the ODOT Noise Analysis Study was not deficient for this reason.

Moreover, Plaintiffs do not dispute that ODOT performed its analysis pursuant to FHWA regulations, and they present no authority to challenge FHWA's Guidelines or their reliance thereon.  In short, Plaintiffs have failed to show that FHWA's reliance on ODOT's Noise Analysis Study is arbitrary.  Mount Royal Joint Venture at 753.  Accordingly, FHWA's

---

[6] Plaintiffs also fail to explain how protocols established for aircraft are applicable to a bridge built for cars and a train.

constructive use determination regarding noise impacts must be accorded the proper level of deference.

Plaintiffs further argue that "none of the cases cited by FHWA regarding the degree of deference provided involve the critique of a noise analysis by another expert agency."  Plaintiffs' Reply Brief at 16.  Similar to their analysis of the <u>City of Alexandria</u> case, discussed *supra* at 8, Plaintiffs fail to explain how that factual distinction (lack of a critique by another agency) renders the legal principle announced in the cases cited by FHWA inapplicable to the present case.  Apparently, Plaintiffs think that because NPS has certain experience in conducting noise analyses, NPS's disagreement with FHWA on this issue precludes the Court from deferring to FHWA's conclusions.  But Plaintiffs have cited no authority in support of this proposition.  Moreover, Plaintiffs contention that, due to its experience, NPS's analysis "is just as entitled to deference as that prepared by FHWA," Plaintiffs' Reply Brief at 16, is plainly wrong.  Deference is owed to the agency making the decision, not to a contributing agency that also may have relevant experience.  <u>See</u>, <u>e.g.</u>, <u>American Lung Ass'n v. EPA</u>, 134 F.3d 388, 392 (D.C. Cir. 1998) ("Judicial deference to decisions of administrative agencies ... rests on the fundamental premise that agencies engage in reasoned decision-making.").

2.    <u>FHWA Properly Classified the Little Miami River as a Category B Noise Receptor</u>.

Plaintiffs argue that FHWA's conclusion that no constructive use of a 4(f) resource would occur is deficient because FHWA used the wrong noise classification.  According to Plaintiffs, the Horseshoe Bend area of the Little Miami River, where the proposed crossing may be built, is a "place of serenity and quiet" which qualifies the Little Miami River as a Category A, not Category B, noise receptor.  <u>See</u>, <u>e.g.</u>, Plaintiffs' Opening Brief at 24 ("There can be no doubt that the stretch of the Little Miami River where DOT proposes to construct a multi-lane

- 16 -

bridge is a park or open space that provides quiet, [*sic*] that the opportunity for serenity is of extraordinary significance....").  As an initial matter, there is no objective reference in the Record to support Plaintiffs' characterization of the Horseshoe Bend.  To the contrary, ODOT's Noise Analysis Study demonstrates considerable ambient noise levels throughout the Horseshoe Bend area.  AR 9524, 9533 - 35.

Moreover, Plaintiffs have cited no authority for the proposition that an entire Section 4(f) resource should be classified as a higher-level noise receptor based on the circumstances existing at a discrete portion of the resource, and such a notion is completely unreasonable.  This Court should not allow Plaintiffs to bootstrap their perceived attributes of one small segment of the River to classify the entire River as a Category A noise receptor.  One can always find a place in or around a resource that is a "place of serenity and quiet."   Therefore, using this lowest common denominator standard, virtually every resource could be classified as a Category A noise receptor.  This is not what FHWA contemplated when it drafted 23 C.F.R. § 772 Table 1, which governs noise abatement criteria; otherwise, the four other categories provided therein would be effectively superfluous.

In addition, relying on one small portion of a resource to determine its noise capacity paints an inaccurate picture of the resource.  The portion of the Little Miami River that passes through the Eastern Corridor is traversed by four bridges and power lines and is adjacent to Lunken Airport, railroads, a landfill, and other industrial sites.  AR 1718, 8439, 47076, 47282, 47323, 47326.  Plaintiffs do not dispute these facts, but seek to avoid their import by arguing that "the presence of these imprints of humans does not mean that the opportunity for a serene and quiet experience does not exist."  Plaintiffs' Reply Brief at 18.  "Opportunity," however, is not

reality and is not a reasonable standard by which to judge noise criteria, and more importantly, not the standard employed by FHWA.[7]

      B.     FHWA Properly Found No Constructive Use from Visual or Recreational Impacts.

Plaintiffs' argument regarding impacts from a bridge constituting a constructive use of the Little Miami River focuses solely on the Horseshoe Bend area of the River.  The protected attributes of the Horseshoe Bend, however, will not be substantially impaired by a new bridge.  As such, and as Plaintiffs fail to present any other evidence or argument regarding a new bridge's potential impacts on the resource, their challenge to FHWA's conclusion regarding no constructive use of the resource must fail.

The Record does not support Plaintiffs' claim that a constructive use would occur in the Horseshoe Bend area.  As an initial matter, in recommending approval of the River for inclusion in the Wild and Scenic system, DOI stated that "while we would be reluctant to support any highway proposal which would have a severe adverse impact, ... <u>nothing in the Wild and Scenic Rivers Act precludes the construction of a bridge across a designated river</u>.  Such situations must be reviewed on a case-by-case basis." AR 9924 (emphasis added).  Here, FHWA conducted such an assessment, noting that a Norfolk & Southern Railroad bridge immediately precedes the Horseshoe Bend, power lines traverse the River in this area, and a landfill sits adjacent to the Bend.  AR 47707.  FHWA also considered that mitigation measures, such as removal of the

---

      [7] Even if the Court were to conclude that the Little Miami River should be classified as a Category A noise receptor, the fact that the noise levels would exceed the Category A criteria does not *per se* mean that a constructive use has occurred.  <u>See</u> 23 C.F.R. § 771.135(p) (providing that a constructive use does not occur if noise levels do not exceed noise abatement criteria, but not the converse).  Under such circumstances, FHWA would need to determine whether the noise levels constitute a substantial impairment of the protected attributes of the resource.  <u>Id.</u>

landfill, could improve the visual attributes of this section of the River.  AR 47708.

Accordingly, FHWA reasonably concluded that a new bridge would not substantially impair the

visual qualities of the Horseshoe Bend, and their conclusion is entitled to deference.  AR 47717.

     Plaintiffs also contend that "[i]mpairment of the visual ... attributes of the river will, in

turn, substantially impair recreational enjoyment."  An impact to a resource's recreational values

that would rise to the level of a constructive use would mean that people no longer could recreate

at the resource, and also implies that no mitigation efforts could ever correct the impacts.  For the

portion of the Little Miami River that flows through the Eastern Corridor, the chief recreational

attributes are kayaking and canoeing.  AR 47717.  A new bridge over the Horseshoe Bend will

not physically interfere with these activities, as the bridge will clear-span the River (unlike

Option 2, which would add more piers to the River).  Id.  Moreover, because of the multiple

bends in the River at this area, any diminution in the visual attributes of kayaking or canoeing in

this area are brief in duration.  AR 1718.  A bridge would be visible to a kayaker or canoeist only

for a very short time until they passed the next bend in the River.  Id.  In FHWA's judgment, the

impacts were not so severe as to constitute a constructive use and the agency's decision is

entitled to deference.

     Finally, Plaintiffs' attempt to distinguish Geer v. Fed. Highway Admin., 975 F. Supp. 47

(D. Mass. 1997) and The Laguna Greenbelt, Inc. v. United States Dep't of Transp., 42 F.3d 517

(9th Cir. 1994) is unavailing.  For example, Plaintiffs argue that the lead agencies "fail to

acknowledge 'the urban context' of the parks" in Geer, which according to Plaintiffs is the

reason why the court found that the impacts were not substantial.  Plaintiffs' Reply Brief at 22.

Plaintiffs are incorrect.  The lead agencies did not fail to acknowledge "the urban context" of the

parks in Geer; rather, the lead agencies embraced the similarities between Geer -- a bridge in an

urban setting -- and this case.  <u>See</u> discussion in ODOT's Opening Brief at 3 regarding the urban setting of the Little Miami River.  And while Plaintiffs contend that "the construction of a new bridge over the scenic and undisturbed portion of the Little Miami River is substantially different and far more severe than the impacts at issue in <u>Laguna</u>," Plaintiffs offer no explanation, other than their own subjective belief, as to why this is the case.  In fact, the transportation project in <u>Laguna</u> affected "the last significant open space in Orange County," California, an area far more affected by urban sprawl than the Eastern Corridor.

In sum, Plaintiffs have failed to carry their burden of demonstrating that FHWA improperly determined that a new bridge crossing would not constitute a constructive use of the Little Miami River.  Accordingly, Plaintiffs' Section 4(f) claim should be dismissed.

## CONCLUSION

For the foregoing reasons, as well as the reasons discussed in ODOT's Opening Brief and FHWA's briefs, ODOT respectfully requests that this Court grant summary judgment in favor of the lead agencies on all counts of Plaintiffs' Complaint.

Dated:  September 14, 2007

Respectfully submitted,


___s/ Frederick C. Schoch_____
(signed with express permission by Fred R. Wagner)
MARC DANN
Attorney General of Ohio
FREDERICK C. SCHOCH
Trial Attorney
Assistant Attorney General
Transportation Section
150 East Gay St., 17th Floor
Columbus, Ohio  43215-3130
Phone:          (614) 466-4656
Fax:             (614) 466-1756
fschoch@ag.state.oh.us

FRED R. WAGNER
Outside Counsel to Ohio Department of Transportation
D.C. Bar No. 416009
Beveridge & Diamond, P.C.
1350 I Street, NW, Suite 700
Washington, D.C.  20005-3311
Phone:          (202) 789-6041
Fax:             (202) 789-6190
fwagner@bdlaw.com

*Attorneys for Defendant-Intervenor*