```
                 UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA


RIVERS UNLIMITED, et al.,        :
                                 :
          Plaintiffs,            :
                                 :
     v.                          :   Civil Action No. 06-1775 (JR)
                                 :
U.S. DEPARTMENT OF               :
TRANSPORTATION, et al.,          :
                                 :
          Defendants.            :
```

**MEMORANDUM**

This case involves a dispute about a new transportation project designed to improve commuting between downtown Cincinnati and its east-lying suburbs. Commuters in this corridor must cross the Little Miami River to reach downtown Cincinnati. A major investment study (MIS) was done to determine a preferred approach for improving congestion in the area. Stakeholders and community groups assessed and debated various plans. Late in the MIS process, two highway options were under consideration: so-called Option 2, which involved expanding an existing river crossing at the Beechmont Levee, and Option 1, which called for a new bridge across the Little Miami in the area known as the horseshoe bend. At the close of the MIS process, Option 2 was rejected in favor of the new bridge proposed by Option 1.

The Federal Highway Administration (FHWA) and the Ohio Department of Transportation (ODOT) decided to complete the environmental impact statement (EIS) required by the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., in two

"tiers." Tier 1, which has been completed, assessed the overall transportation corridor that was chosen for the new crossing and other improvements. Tier 2, which will be completed later, will assess variations on the many details of the project. The Tier 1 EIS, which is the subject of this suit, assessed only the environmental impact of highway Option 1. It did not assess the environmental impact associated with the rejected Option 2 – the expansion of the old Beechmont crossing.

Plaintiffs have launched four attacks upon the Tier 1 Final EIS (FEIS). Their first complaint is that the exclusion of Option 2 from the FEIS runs afoul of the NEPA requirement that an EIS assess alternatives to the proposed plan that would also meet the project's overall purpose and need. Their second claim is that FHWA substantively erred in finding that the new bridge would not be a "constructive use" of the Little Miami River under section 4(f) of the Transportation Act, 23 U.S.C. § 138; 49 U.S.C. § 303. The third and fourth complaints are, respectively, that the agency failed to perform a new EIS in response to new information, and that the agency used a faulty gas price in doing its environmental assessment. Because plaintiffs cannot carry their heavy burden on any of these claims, summary judgment will be awarded to the agencies.

**I.  NEPA Claim**

NEPA and its implementing regulations require an assessment of the environmental impact of any major federal action, as well as an environmental assessment of alternative plans.  See 42 U.S.C. § 4332(2)(C)(iii), (E); 40 C.F.R. 1502.14. Obviously, not all theoretically plausible alternatives can be assessed.  The selection of alternatives is thus governed by a rule of reason.  Only options that meet the purpose and need of the project within the reasonable judgment of the agency need be considered.  See, e.g., City of Alexandria v. Slater, 198 F.3d 862, 867 (D.C. Cir. 2000); Citizens Against Burlington, Inc. v. Busey, 938 F.2d 190, 196 (D.C. Cir. 1991); 40 C.F.R. 1502.13-14. Circuit law is clear that the agency's determination, both of what the purpose and need are and of whether a proposed alternative meets them, is reviewed with considerable deference. City of Alexandria, 198 F.3d at 867; Citizens Against Burlington, 938 F.2d at 196.

The first issue in this case thus resolves itself into a fairly simple question: Did the agency make a reasonable determination that Option 2 does not meet the purpose and need of the project?  If so – if the determination was neither arbitrary nor capricious – then Option 2 was properly excluded from NEPA-style assessment in the Tier 1 FEIS.

The administrative record establishes that the agency did make the relevant finding in a manner consistent with the requirements of the Administrative Procedure Act (APA), 5 U.S.C. § 706.  Various agencies and interested parties – including plaintiffs – reacted to the Preliminary Draft Environmental Impact Statement (PDEIS) and Draft Environmental Impact Statement (DEIS) by calling for a full assessment of Option 2.  The FHWA and ODOT responded to these comments with nine pages in the FEIS that explained why Option 2 did not meet the purpose and need of the project.  See AR 477741-49. Contained in these pages is an extensive chart comparing the relative strengths and weaknesses of Option 1 and Option 2 on the basis of evidence in the administrative record.  See id.  Plaintiffs' counsel conceded at oral argument that the entries in that chart are accurate and supported by the record.  (Hr'g Trans. 61-63, Oct. 3, 2007).  The only question, therefore, is whether the entries in this chart fail so utterly to support the conclusion that Option 2 does not meet the purpose and need of the project that reaching that conclusion should be seen as arbitrary or capricious.  That is a low bar, and defendants have easily cleared it.

Plaintiffs suggest that the chart shows only that Option 2 is inferior to Option 1, and not that Option 2 fails to meet the purpose and need of the project.  Yet the agency expressly found otherwise in the FEIS, see AR 47749 ("This

- 4 -

review . . . confirms that 'Option 2' does not appropriately or reasonably meet the transportation purpose or the long-term regional transportation need for the Eastern Corridor . . . ."). That determination is entitled to substantial deference.  It may be that the <u>best</u> interpretation of the information in the FEIS chart is that it establishes the superiority of Option 1 over Option 2 rather than the ultimate failure of Option 2 to meet the purpose and need of the project.  The latter interpretation of the data is not unsupported, however, nor is it so speculative as to fail the arbitrary or capricious standard.

Pointing to statements in the MIS report that Option 2 performs similarly to Option 1, plaintiffs further submit that the determination that Option 2 fails to meet the purpose and need of the project is nothing but a post-hoc rationalization of a decision already made.  Yet what the plaintiffs describe as post-hoc rationalization is just what the APA process requires and routinely produces.  Numerous comments alerted the agency to the inadequacy of its discussion of Option 2 in both the PDEIS and DEIS.  The agency responded with a lengthy discussion of the failings of Option 2.  This is how decision by notice and comment works: statements that respond to comments by laying out the basis for the decision at issue are both precisely what the agency is supposed to supply and precisely what is entitled to judicial deference.

I find that the agency made a determination on the basis of accurate information in the record that Option 2 does not meet the purpose and need of the project, and that this determination was not arbitrary or capricious.  For this reason, and for only this reason,[1] I find that defendants have not run afoul of NEPA by failing to assess Option 2 in the FEIS.

**II.  Section 4(f) Claim**

Because the Little Miami is designated as a valuable resource under the Wild and Scenic Rivers Act, 16 U.S.C. § 1271 et seq., there are certain requirements that section 4(f) of the Transportation Act imposes before the river can be "used" by a transportation project.  The FHWA determined, however, that its planned crossing of the Little Miami with a clear span bridge will not constitute a "use" of the river – either physical or constructive.  That decision can be overturned only if arbitrary or capricious.  The record reflects that FHWA's decision was

---

[1] Defendants overreach when they argue that Option 2 was properly excluded at the EIS stage because it had been rejected at the community-sensitive, multiple-stakeholder, MIS stage.  The purpose of NEPA's EIS assessment is to assist the public and the relevant decision-makers to understand the environmental impact of a chosen action and its possible alternatives.  See 40 C.F.R. 1502.2(g).  The purpose of an MIS is to select a preferred alternative that attends to the voices of many interested parties.  These purposes are not the same – indeed, an option that fully meets the purpose and need of the project might be rejected at the MIS stage for any number of other reasons.  An alternative can be excluded from EIS analysis if and only if it fails to meet the purpose and need of the project within the reasonable judgment of the agency.

based on an informed judgment as to the current visual and aural characteristics of the Little Miami and an informed estimate of the impact of the proposed multi-lane bridge.  Neither the reasons given for that judgment nor the underlying data on which they rested were so indefensible as to be arbitrary or capricious, and so FHWA's determination of no constructive use must be upheld.

A constructive use occurs when "proximity impacts are so severe that the protected activities, features, or attributes that qualify a resource for protection under Section 4(f) are substantially impaired."  23 C.F.R. 771.135(p)(2).  Application of that standard requires judgments to be made, both about the qualities that make the river remarkable, and about how significantly they will be impaired by the new bridge.  Neither of FHWA's judgments in these respects appears arbitrary or capricious.

First, the agency determined that "in the proposed bridge location, the primary activity is canoeing and kayaking," AR 47714, and that, although the area is scenic, it is not serene or unsullied by man-made distractions.  Views are already interrupted by power lines, existing crossings, landfills, sewage overflow pipes, clearings for farmland, and other semi-industrial uses.  See AR 47707.  This is already a substantial amount of ambient background noise.  As FHWA sees it, this river is still

an outstanding area for boating, but these visual and acoustical intrusions make it less than serene or quiet.  FHWA's view of the river is consistent with the river's classification under the Wild and Scenic Rivers Act as a "recreational" river.  This is the lowest classification, below both "wild" and "scenic," and it entails the least protection.  See 16 U.S.C. § 1273.

The agency plausibly determined that the visual impacts of Option 2 would not "substantially impair" existing uses.  Although some people do birdwatch in the area and use it to seek serenity and quiet, there is no public access to the horseshoe bend, whose overwhelming use is for recreational boating.  AR 47717.  The agency determined that the bends in the river would hide the bridge from sight along many stretches not immediately adjacent to the bridge, and that visual effects could be offset by mitigating efforts to clean up or improve other areas in the immediate vicinity of the river.  Id.  Although the National Park Service (NPS) argued vigorously that it is impossible to hide a multi-lane highway bridge from view, the judgment regarding substantial impairment was for FHWA to make: judicial deference runs to its assessment and not to that of the Park Service.  That judgment was not unsupported by the record, nor was it arbitrary or capricious, and it must be upheld.

FHWA's assessment of noise levels, done according to its established procedures, is also entitled to substantial

deference. FHWA's standard method is to determine the appropriate class of "noise receptor" for a given site, and then test to determine whether projected noise levels after the new project is completed will exceed applicable noise abatement criteria. The crucial determination in this case was that the relevant stretch of the Little Miami river is a "Class B" receptor, rather than a Class A receptor. That decision is supported by the record and neither arbitrary nor capricious.

Class A receptors are described by the regulations as areas where "serenity and quiet are of extraordinary significance and . . . preservation of those qualities is essential if the area is to continue to serve its intended purposes." In contrast, Class B receptors are described as "[p]icnic areas, recreation areas, playgrounds, active sports areas, [and] parks." See 23 C.F.R. 772, Table 1. Parkland fits in both categories. A river running through a semi-developed area – and whose primary use is for recreational activities such a boating – straddles the ephemeral border between areas where "serenity and quiet are . . essential" and "recreation areas." How to classify the Little Miami is obviously a question of interpretation, and FHWA's interpretation of its own regulations is entitled to special deference. See Wyo. Outdoor Council v. U.S. Forest Serv., 165 F.3d 43, 52 (D.C. Cir. 1999) (review of an agency's

- 9 -

interpretation of its own regulations is "more deferential . . . than that afforded under Chevron").

FHWA's regulations state that a constructive use does not occur on the basis of noise pollution where the expected noise level will not exceed "the FHWA noise abatement criteria." Those criteria set a maximum of 67 decibels for a Class B receptor. See 23 C.F.R. 771.135(p)(5)(ii). Although a Park Service expert disputed the accuracy of the noise sampling done by ODOT and relied on by FHWA, that expert did not question the agency's finding that noise from the bridge would not exceed the 67 decibel maximum applicable to Class B receptors. The agency's judgment that projected noise pollution would not create a constructive use was consistent with existing regulations and supported by the record.

### III. New EIS Claim

The foregoing discussion wholly answers plaintiffs' claim that a new EIS is called for in light of the NPS expert report on ODOT's noise sampling procedures. A new EIS is only required where new information "provides a seriously different picture of the environmental landscape." City of Olmstead Falls v. FAA, 292 F.3d 261, 274 (D.C. Cir. 2002). The report of the NPS expert suggests – but does not prove – that more careful noise sampling procedures would demonstrate lower levels of existing noise pollution than is suggested by the ODOT data. Yet

the NPS expert report does not suggest that post-project noise levels will exceed the regulatory maximum for a Class B receptor, nor would FHWA be compelled to change its designation of the Little Miami on the basis of this lower estimate of extant noise pollution.  A report suggesting that the Little Miami is in fact quieter than FHWA currently believes it to be does not provide a "seriously different picture" of the river.

### IV.   Gasoline Price Claim

Plaintiffs finally take issue with the gasoline price used for the economic modeling in the EIS.  They note that the modeling price of $1.13/gallon used for gasoline is unrealistic and argue that its use violates the requirement that an EIS be based on accurate data.

The price of gasoline used did not inflate the economic benefits of the project, however, nor did its use give insufficient weight to environmental factors.  The price of gasoline was used in the modeling to calculate the benefits of the project based on vehicle hours saved from shorter routes, decreased congestion, and improved mass transit.  The use of a more realistic gasoline price would likely have raised the calculated benefits associated with the project.  It is distressing that FHWA bases <u>many</u> of its calculations on unrealistic estimations of the cost of driving, but, in this particular instance, lack of realism does not appear to have

skewed the analysis in the agencies' favor.  See <u>State of Idaho By and Through Idaho Pub. Util. Comm'n v. ICC</u>, 35 F.3d 585, 594 (D.C. Cir. 1994) (where alleged error in calculating costs and benefits would only offer greater support for the decision, such error is harmless).

An appropriate order accompanies this memorandum.


JAMES ROBERTSON
United States District Judge